**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| THE STATE OF MICHIGAN, GOVERNOR OF THE STATE OF MICHIGAN, and MICHIGAN DEPARTMENT OF NATURAL RESOURCES, <br><br> Plaintiffs, <br><br> v. <br><br> ENBRIDGE ENERGY, LIMITED PARTNERSHIP, ENBRIDGE ENERGY COMPANY, INC., and ENBRIDGE ENERGY PARTNERS, L.P, <br><br> Defendants. | Case No.  1:20-cv-01142-JTN-RSK <br><br> Hon. Janet T. Neff |

**AMENDED NOTICE OF REMOVAL**

PLEASE TAKE NOTICE THAT Defendants Enbridge Energy, Limited Partnership; Enbridge Energy Company, Inc.; and Enbridge Energy Partners, L.P. (collectively, "Enbridge"), hereby amend the Notice of Removal filed on November 24, 2020 (the "Original Notice").  Notice of Removal, ECF No. 1, PageID.1.  In the Original Notice, Enbridge removed this case from the Circuit Court for the 30th Judicial Circuit, Ingham County, Case No. 20-646, to the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1331, 1441(a), 1442, and 1367.  Enbridge hereby incorporates the Original Notice as if fully set forth herein.  By this amended Notice, Enbridge sets forth additional grounds by which the Court possesses jurisdiction over this action.

1

### A. Enbridge's amended notice of removal is timely.

1. Plaintiffs State of Michigan, Governor of the State of Michigan, and Michigan Department of Natural Resources (collectively, the "State") filed the Complaint in state court on November 13, 2020. Complt., ECF No. 1-1, PageID.19. Enbridge was formally served on November 24, 2020. Enbridge's amended notice of removal is timely under 28 U.S.C. § 1446(b) because Enbridge has filed this amended notice within 30 days of receiving service of the Summons and Complaint. *See N. Ill. Gas Co. v. Airco Indus. Gases*, 676 F.3d 270, 273 (7th Cir. 1980) ("A removal petition may be amended freely within the thirty day period.").

### B. This Court has removal jurisdiction under the grounds invoked in the Original Notice

2. As set forth in the Original Notice, the Action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one which may be removed pursuant to 28 U.S.C. §1441(a).

3. The Original Notice identified two independent grounds: (1) the action necessarily raises disputed and substantial federal questions that a federal forum may entertain without disturbing a congressionally approved balance of responsibilities between the federal and state judiciaries, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and (2) Enbridge is authorized to remove this action under 28 U.S.C. §1442(a)(1) because it was "acting under" the regulations and directives of a federal agency. *See* Notice of Removal at ¶¶ 7-8, 10-22, ECF No. 1, PageID.4-13.

4. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over any claims which it does not have original federal question jurisdiction because they form

part of the same case or controversy as those claims over which the Court has original jurisdiction.

### C. In addition, the Complaint arises under federal common law

5. Enbridge now identifies an additional ground by which the Court possesses jurisdiction over this action: § 1331 supplies this Court with jurisdiction over this suit because Plaintiffs' claims implicate uniquely federal interests and thus must be brought, if at all, under federal common law. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (recognizing original federal jurisdiction over "claims founded upon federal common law"); *Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 926 (5th Cir. 1997) ("Federal jurisdiction exists if the claims in this case arise under federal common law."); *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 (9th Cir. 2002) (same). While Plaintiffs present their claims as being brought under state law (Complt., ECF No. 1-1, PageID.19), courts have long recognized that claims may arise under federal common law regardless of whether the plaintiff purports to plead federal law claims. *See United States v. Standard Oil Co.,* 332 U.S. 301, 307 (1947) (holding that certain claims asserted under state law must be governed by federal common law because they involved "matters essentially of federal character").

6. This action implicates three "uniquely federal interests": (i) the navigable and interstate waters of the United States, (ii) international affairs and commerce, and (iii) claims of environmental protection from interstate and international sources. Plaintiffs attempt to apply Michigan state law to interstate and, indeed, international activity. Their claims require a uniform federal rule of decision. Even if there was some viable component

3

to these claims (which there is not), federal common law would govern any such component. The Complaint should thus be heard in this federal forum.

7. Although "[t]here is no federal general common law," *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), there remain "some limited areas" in which the governing legal rules are supplied not by state law, but by "what has come to be known as 'federal common law,'" *Tex. Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, 640 (1981) (quoting *Standard Oil*, 332 U.S. at 308). "[W]here the federal interest requires a uniform rule, the entire body of state law applicable to the area conflicts and is replaced by federal rules." *Boyle v. United Techs., Corp.*, 487 U.S. 500, 508 (1988).

8. In particular, federal common law governs areas implicating "uniquely federal interests," *see, e.g.*, *id.* at 504-07, such as where the issue is, by nature, "within the national legislative power" and there is a "demonstrated need for a federal rule of decision" on that issue. *American Electric Power Co. v. Connecticut ("AEP")*, 564 U.S. 410, 419, 421 (2011) (internal quotation marks omitted). These interests are also present where "the interstate or international nature of the controversy makes it inappropriate for state law to control." *Tex. Indus.*, 451 U.S. at 641. *See also* Henry Friendly, IN PRAISE OF ERIE-AND OF THE NEW FEDERAL COMMON LAW, 39 N.Y.U. L.Rev. 383, 405 (1964) ("*Erie* led to the emergence of a federal decisional law in areas of national concern that is truly uniform because, under the supremacy clause, it is binding in every forum...."), cited with approval in *AEP*, 564 U.S. at 421.

9. "[I]f federal common law exists, it is because state law cannot be used." *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 n.7 (1981). In these areas, "the entire body of state law . . . is replaced by federal rules." *Boyle*, 487 U.S. at 508.

4

10.     *Navigable waters of the United States*.  Federal common law governs claims arising out of the "interstate or navigable waters" of the United States.  In *Illinois v. City of Milwaukee*, 406 U.S. 91, (1972), the State of Illinois brought a nuisance abatement suit against four cities and two sewerage commissions in Wisconsin, alleging that defendants were discharging raw and inadequately treated sewage into Lake Michigan.  *Id*. at 91-92.  The Supreme Court expressly held that the suit would lie in federal district court, as one arising under the laws of the United States.  "The question is whether pollution of interstate and navigable waters creates actions arising under the 'laws' of the United States within the meaning of § 1331(a).  We hold that it does; and we also hold that § 1331(a) includes suits brought by a State."  *Id.* at 99.  The "law" invoked, the Court explained, was the federal common law, existing within the interstices of the numerous federal environmental protection statutes (*id*. at 101-04), and derived from the well-established "interstate common law" regarding disputes over interstate and navigable waters (*id*. at 105-06, quoting *Kansas v. Colorado*, 206 U.S. 46, 98 (1907)).  The Supreme Court reaffirmed this federal jurisdictional holding in *AEP,* 564 U.S. at 420-21.

11.     In *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765 (7th Cir. 2011), the Seventh Circuit considered the application of federal common law to claims alleging that the operation of the Chicago Area Waterway System would allow invasive non-native species of carp to enter the Great Lakes.  *See id*. at 771.  Because federal common law "extends to the harm caused by … environmental and economic destruction" by way of navigable waters, it necessarily applied to the claims at issue.  *Id.*

12.     Here, for example, Count I of the Complaint is premised on alleged harm to the U.S. navigable waters.  Plaintiffs assert authority under state law to protect the interstate

5

navigable waters in the Great Lakes and claim that Enbridge's continued operation of the Straits Pipeline is contrary to the interests of those interstate navigable waters.  Complt. Ex. 2 at pp. 5-9, ECF No. 1-1, PageID.57-61; *see also* Complt. ¶ 29, ECF No. 1-1, PageID.27 (incorporating by reference Section I.C of Ex. 2).  According to the Complaint, "transporting millions of gallons of petroleum products each day through two 67-year-old pipelines that lie exposed in the Straits below uniquely vulnerable and busy shipping lanes presents an extraordinary, unreasonable threat to public rights because of the very real risk of further anchor strikes and other external impacts to the Pipelines, the inherent risks of pipeline operations, and the foreseeable, catastrophic effects if an oil spill occurs at the Straits."  Complt. ¶ 33, ECF No. 1-1, PageID.27.  Plaintiffs assert that the "Straits of Mackinac are at the heart of the Great Lakes, a unique ecosystem of enormous public importance," and that an oil spill at the Straits could threaten the "waters and shorelines areas of Lake Michigan and Lake Huron" and "impact up to hundreds of miles of Great Lakes shoreline."  Complt. Ex. 2 at 7, ECF No. 1-1, PageID.59.  According to the Complaint, "Enbridge's operation of the Straits Pipeline presents a substantial, inherent and unreasonable risk of an oil spill and such a spill would have grave ecological and economic consequences, severely impairing public rights in the Great Lakes and their public trust resources."  *Id.* at 9, PageID.61.  This claim cannot be a state-law claim because it arises out of U.S. navigable waters.

   13. Because the State's actions arise out of navigable waters of the United States, there is an "overriding federal interest in the need for a uniform rule of decision." *Milwaukee*, 406 U.S. at 105 n.6.  Accordingly, the Court has jurisdiction under § 1331 and removal is proper.

6

14. *International affairs and commerce*. The international nature of the claims provides further support for the proposition that they cannot be state-law claims and that, if anything, they are federal common law claims that support jurisdiction in federal court. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 425 (1964) (issues involving "our relationships with other members of the international community must be treated exclusively as aspects of federal law"). In order to prevent a single state from embroiling the entire country in disputes with foreign sovereigns, and to ensure "federal uniformity in an area where federal uniformity is essential," foreign relations must be entrusted to the federal government exclusively. *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 448-50 (1979).

15. Because foreign relations is an inherently federal subject, cases raising foreign relations concerns cannot be left to state court judges applying state law. There are no "well developed bodies of state law dealing with foreign affairs" to guide such judges, 19 FEDERAL PRACTICE & PROCEDURE § 4517 at n.94 (3d ed.) (quotation omitted), and there is no room to allow states to experiment in foreign relations issues, because in the realm of foreign relations "any such diversity between states would needlessly complicate the handling of foreign relations of the United States." *Republic of Iraq v. First Nat'l City Bank*, 353 F.2d 47, 50 (2d Cir. 1965).

16. Accordingly, cases implicating important foreign policy relations issues may be removed to federal court. "[T]here is federal question jurisdiction over actions having important foreign policy implications." *Republic of Philippines v. Marcos,* 806 F.2d 344, 352 (2d Cir. 1986); *Torres v. S. Peru Copper Corp*., 113 F.3d 540, 542 (5th Cir. 1997) (upholding removal of state tort claims raising foreign relations issues, stating

"plaintiffs' complaint raises substantial questions of federal common law by implicating important foreign policy concerns"); *Republic of Philippines v. Marcos,* 806 F.2d at 353 (exercising federal jurisdiction where "plaintiff's claims … will directly and significantly affect American foreign policy").

17. As explained in the Original Notice, the claims in the Complaint involve foreign commerce and the foreign affairs of the United States. *See* Notice of Removal at ¶¶ 13-14, ECF No. 1, PageID.6-7. That is an area where federal common law—not state law—must govern. *Tex. Indus*., 451 U.S. at 641 ("[It is] the interstate or international nature of the controversy [that] makes it inappropriate for state law to govern.").

18. The interstate and international interests are further demonstrated by international treaties addressing pollution in the Great Lakes. *See, e.g.*, Great Lakes Water Quality Agreement, 33 U.S.C. § 1268(a)(1) (explaining that the federal government has a direct and significant interest in the Great Lakes as a "national resource"); 33 U.S.C. § 1268(c)(5) (providing that the EPA's program office, in consultation with the U.S. Coast Guard, "shall identify areas within the Great Lakes which are likely to experience numerous or voluminous spills of oil or other hazardous materials from land based facilities, vessels, or other sources"); Boundary Waters Treaty of 1909 between the United States and Canada, 36 Stat. 2448 (extending "to the waters of Lake Michigan and to all canals connection boundary waters"). This action, by seeking to supplement these pre-existing federal efforts, necessarily implicates the United States' position on the international front.

19. Given that this suit necessarily implicates international affairs and commerce, it must be heard in federal court. *See Torres v. S. Peru Copper Corp.*, 113 F.3d at 542.

20. *Claims of environmental protection from interstate and international sources*. This Complaint is inherently premised on concerns about environmental harm to the Great Lakes from petroleum being transported from non-Michigan sources. It necessarily implicates uniquely federal interests and thus must be governed, if at all, by federal common law.

21. The United States Supreme Court has long recognized that "[e]nvironmental protection is undoubtedly an area within national legislative power" for which "federal courts may . . . fashion federal common law." *AEP*, 564 U.S. at 421 (internal quotation marks). *Accord, e.g.*, *Illinois v. City of Milwaukee,* 406 U.S. at 103 ("When we deal with air and water in their ambient or interstate aspects, there is a federal common law."). In *AEP,* plaintiffs sued several electric utilities, contending that the utilities' greenhouse gas emissions contributed to global climate change and created a "substantial and unreasonable interference with public rights, in violation of the federal common law of interstate nuisance, or, in the alternative, of state tort law." 564 U.S. at 418 (internal quotation marks). In determining whether plaintiffs had properly stated a claim for relief, the Supreme Court determined that federal common law governs claims involving "air and water in their ambient or interstate aspects." *Id*. at 421 (internal quotation marks). *Accord Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987) ("[T]he control of interstate pollution is primarily a matter of federal law."); *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 855 (9th Cir. 2012) ("Post–*Erie*, federal

9

common law includes the general subject of environmental law and specifically includes ambient or interstate air and water pollution.").

22. Here, the gravamen of the Complaint is that petroleum being transported from interstate and international sources could spill into the Straits, resulting in environmental damage to the Great Lakes. Complt. Ex. 2 at pp. 5-9, ECF No. 1-1, PageID.57-61. These claims inherently implicate national and international interests and thus must be governed by a uniform federal rule. Accordingly, the exercise of federal court jurisdiction is proper and necessary.

23. In sum, this suit implicates multiple "uniquely federal interests:" the "navigable waters" of the United States, international affairs and commerce, and claims of environmental protection from interstate and international sources. Accordingly, these claims must be brought, if at all, under federal common law, and must be heard in federal court.

### D. The action is removable because Plaintiffs' claims fall within the Court's admiralty jurisdiction

24. Plaintiffs' complaint is separately removable because one or more of the claims falls within the Court's original admiralty jurisdiction. The Constitution extends the federal judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. Const. Art. III, § 2. "The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101(a).

25. In *Grubart, Inc. v. Great Lakes Dredge & Dock*, 513 U.S. 527 (1995), operators of a barge in the Chicago River drove piles into a riverbed above an underground

tunnel, causing the tunnel's exterior to crack. Once the tunnel cracked, the water from the Chicago River poured into the tunnel and then flooded buildings in downtown Chicago. *Id.* at 529-31. The Court characterized the incident as "damage by a vessel in navigable water to an underwater structure." *Id.* at 539. So described, the Court had little difficulty in holding that the case (a dispute over tort liability) fell within the scope of federal admiralty jurisdiction. *See id.*

26. Similarly, here, Plaintiffs rely heavily on potential damage by a vessel in navigable waters to an underwater structure—specifically, the Straits Pipelines. *See* Complaint, Ex. 2 at 5-7, ECF No. 1-1, PageID.57-61. Because the claims alleged in the Complaint implicate the Court's admiralty jurisdiction, they are removable under 28 U.S.C. §§ 1441 and 1333.

27. Should Plaintiffs challenge this Court's jurisdiction, Enbridge will further elaborate on these grounds and will not be limited to the specific articulations in the Original or Amended Notice.

### E. Notice has been effected.

28. On November 24, 2020, the Original Notice was filed with the Circuit Court for the 30th Judicial Circuit, Ingham County and concurrently served on Plaintiffs' counsel of record.

Accordingly, on the grounds identified in the Original Notice and in this Amended Notice, this Court has removal jurisdiction.

Dated: December 10, 2020

                                                Respectfully submitted,

                                                /s/ *Peter H. Ellsworth*

                                                Peter H. Ellsworth  (P23657)

Jeffery V. Stuckey (P34648)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
pellsworth@dickinsonwright.com
jstuckey@dickinsonwright.com

Phillip J. DeRosier (P55595)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3866
PDeRosier@dickinson-wright.com

John Bursch (P57679)
BURSCH LAW PLLC
9339 Cherry Valley Avenue SE, #78
Caledonia, MI 49316
(616) 450-4235
jbursch@burschlaw.com

David H. Coburn
William T. Hassler
Alice Loughran
Joshua H. Runyan
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
dcoburn@steptoe.com
whassler@steptoe.com
aloughran@steptoe.com
jrunyan@steptoe.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2020, the foregoing document was served upon Plaintiffs' counsel of record via the ECF filing system.

*/s/  Peter H. Ellsworth*

13