UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE STATE OF MICHIGAN, GOVERNOR OF
THE STATE OF MICHIGAN, and MICHIGAN
DEPARTMENT OF NATURAL RESOURCES,

     Plaintiffs,

v

ENBRIDGE ENERGY, LIMITED PARTNERSHIP,
ENBRIDGE ENERGY COMPANY, INC., and
ENBRIDGE ENERGY PARTNERS, L.P.,

     Defendants.

No. 1:20-cv-01142-JTN-RSK

HON. JANET T. NEFF

**PLAINTIFFS' BRIEF IN
SUPPORT OF MOTION TO
REMAND**

---

Robert P. Reichel (P31878)
Daniel P. Bock (P71246)
Assistant Attorneys General
Attorneys for Plaintiffs
Environment, Natural Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
reichelb@michigan.gov
bockd@michigan.gov

Peter H. Ellsworth (P23657)
Jeffery V. Stuckey (P34648)
Attorneys for Defendants
Dickinson Wright PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
pellsworth@dickinsonwright.com
jstuckey@dickinsonwright.com

---

Phillip J. DeRosier (P55595)
Attorney for Defendants
Dickinson Wright PLLC
500 Woodward Ave., Suite 4000
Detroit, MI 48226
(313) 223-3866
pderosier@dickinsonwright.com

John J. Bursch (P57679)
Attorney for Defendants
Bursch Law PLLC
9339 Cherry Valley Ave., SE, #78
Caledonia, MI 49316
(616) 450-4235
jbursch@burschlaw.com

---

David H. Coburn
William T. Hassler
Alice Loughran
Joshua Runyan
Attorneys for Defendants
Steptoe & Johnson LLP
1330 Connecticut Ave., NW
Washington, DC 20036
(202) 429-3000
dcoburn@steptoe.com
whassler@steptoe.com
aloughran@steptoe.com
jrunyan@steptoe.com

_____/

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO REMAND

Dana Nessel
Attorney General

Robert P. Reichel (P31878)
Daniel P. Bock (P71246)
Assistant Attorneys General
Attorneys for Plaintiffs
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
reichelb@michigan.gov
bockd@michigan.gov

Dated:  March 16, 2021

# TABLE OF CONTENTS

Page

Index of Authorities ........................................................................................................ iii

Concise Statement of Issues Presented ................................................................. ix

Controlling or Most Appropriate Authority ........................................................... x

Introduction ...................................................................................................................... 1

Factual Background—The State's Complaint ........................................................ 2

    A.    Count I ....................................................................................................... 2

    B.    Count II ...................................................................................................... 4

    C.    Count III .................................................................................................... 5

Argument ............................................................................................................................ 5

I.      Enbridge has the burden of establishing federal court jurisdiction .................... 5

II.     This case does not "arise under" federal law for purposes of 28 U.S.C. § 1331. ............... 6

    A.    Enbridge cannot establish jurisdiction here under the "substantial federal question" exception to the well-pleaded complaint rule. ........................................ 7

          1.    No federal issue is necessarily raised by the State's claims. ..................... 9

          2.    None of the federal issues Enbridge raises is substantial. ........................ 12

          3.    Moving this case to federal court would disrupt the congressionally approved balance of judicial responsibilities. ........................................... 15

    B.    Enbridge's preemption arguments fall short of the requirements of the complete preemption doctrine. .............................................................................. 16

    C.    Federal common law does not provide a separate basis for removal. .................. 18

          1.    Enbridge ignores the well-pleaded complaint rule. ................................... 18

          2.    Enbridge exaggerates the scope of federal common law and fundamentally mischaracterizes the subject of the State's Complaint. ................................................................................................. 21

III.    Removal is not proper under 28 U.S.C. § 1442(a)(1) because Enbridge is not
        "acting under" a federal officer, and the actions for which it is being sued were
        not taken under color of federal office................................................................. 25

IV.     This matter is not within the Court's admiralty jurisdiction............................... 27

Conclusion and Relief Requested ...................................................................... 29

# INDEX OF AUTHORITIES

Page

**Cases**

*Al Shimari v. CACI Int'l, Inc.*,
    679 F.3d 205 (4th Cir. 2012) ................................................... 9

*Alleman v. Omni Energy Servs. Corp.*,
    580 F.3d 280 (5th Cir. 2009) ................................................. 27

*Am. Elec. Power Co. v. Connecticut*,
    564 U.S. 410 (2011) ................................................................ 22

*Am. Ins. Ass'n v. Garamendi*,
    539 U.S. 396 (2003) ............................................................ 9, 17

*American Electric Power Co. v. Connecticut*,
    564 U.S. 410 (2011) ................................................................ 19

*AmSouth Bank v. Dale*,
    386 F.3d 763 (6th Cir. 2004) ................................................. 18

*Banco Nacional de Cuba v. Sabbatino*,
    376 U.S. 398 (1964) ................................................................ 24

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
    405 F. Supp. 3d 947 (D. Colo. 2019), *aff'd in part, appeal dismissed in part*, 965 F.3d
    792 (10th Cir. 2020) .......................................................... 14, 18

*Beneficial Nat'l Bank v. Anderson*,
    539 U.S. 1 (2003) .................................................................. 6, 17

*Bennett v. Southwest Airlines Co.*,
    484 F.3d 907 (7th Cir. 2007) ...................................... 10, 15, 16

*Board of Commissioners of Southeast Louisiana Flood Protection Authority East v.
    Tennessee Gas Pipeline Co.*,
    850 F.3d 714, 723 (5th Cir. 2017) ...................................... 10, 19

*Boyle v. United Techs., Corp.*,
    487 U.S. 500 (1988) ............................................................ 19, 22

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987) ...................................................... 6, 17, 18

*City & Cnty. of Honolulu v. Sunoco LP*,
 No. 20-cv-00163-DKW-RT, 2021 WL 531237 (D. Haw. Feb. 12, 2021) .............................. 14

*City of Oakland v. BP PLC*,
 969 F.3d 895 (9th Cir. 2020) ........................................................................... 14, 18

*Cnty. of Maui v. Chevron U.S.A. Inc.*,
 No. 20-cv-00470-DKW-KJM (D. Haw.)................................................................ 14

*Cnty. of San Mateo v. Chevron Corp.*,
 294 F. Supp. 3d 934 (N.D. Cal. 2018), *aff'd in part, appeal dismissed in part*, 960 F.3d
 586 (9th Cir. 2020), *reh'g en banc denied* (Aug. 4, 2020) ....................................... 14

*Columbia Gas Transmission, LLC v. Singh*,
 707 F.3d 583 (6th Cir. 2013) ..................................................................... 13, 15

*Crosby v. Nat'l Foreign Trade Council*,
 530 U.S. 363 (2000)............................................................................................ 9

*Earth Island Institute v. Crystal Geyser Water Co.*,
 No. 20-CV-02212-HSG, 2021 WL 684961 (N.D. Cal. Feb. 23, 2021)............................ 19, 20

*Eastman v. Marine Mech. Corp.*,
 438 F.3d 544 (6th Cir. 2006) ............................................................................... 5

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
 547 U.S. 677 (2006)............................................................................ 8, 12, 13, 14

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
 463 U.S. 1 (1983)................................................................................................. 6

*Fried v. Sanders*,
 783 F. 532 (6th Cir. 2019) .................................................................................. 9

*Glass v. Goeckel*,
 703 N.W.2d 58 (Mich. 2005)............................................................................... 9

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
 545 U.S. 308 (2005)....................................................................................... 8, 9, 15

*Gunn v. Minton*,
 568 U.S. 251 (2013).................................................................................... passim

*Harnden v. Jayco, Inc.*,
 496 F.3d 579  (6th Cir. 2007) ............................................................................. 5

*Herb's Welding v. Gray*,
 470 US 414 (1985)............................................................................................ 29

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
  535 U.S. 826 (2002)..................................................................................... 6

*Illinois Cent. R. Co. v. State of Illinois*,
  146 U.S. 387 (1892)..................................................................................... 22

*Illinois v. City of Milwaukee*,
  406 U.S. 91 (1972)................................................................................. 19, 23

*Japan Line, Ltd. v. Cty. of Los Angeles*,
  441 U.S. 434 (1979)..................................................................................... 24

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
  513 U.S. 527 (1995)................................................................................ 27, 28

*Johnson v. Am. Towers, LLC*,
  781 F.3d 693 (4th Cir. 2015) ...................................................................... 18

*Kinley Corp. v. Iowa Utilities Bd., Utilities Div., Dep't of Com.*,
  999 F.2d 354 (8th Cir. 1993) ........................................................................ 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)....................................................................................... 5

*Long v. Bando Mfg. of Am., Inc.*,
  201 F.3d 754  (6th Cir. 2000) ....................................................................... 5

*Massachusetts v. Exxon Mobil Corp.*,
  462 F. Supp. 3d 31 (D. Mass. 2020) .......................................................... 14

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  388 F. Supp. 3d 538 (D. Md. 2019), *aff'd in part, appeal dismissed in part*, 952 F.3d
  452 (4th Cir. 2020), *cert. granted*, 141 S. Ct. 222 (2020) ......................... 14

*Mays v. City of Flint, Mich.*,
  871 F.3d 437 (6th Cir. 2017) ................................................................. 25, 26

*McKay v. City & County of San Francisco*,
  2016 WL 7425927 (N.D. Cal. Dec. 23, 2016)........................................... 10

*Metro. Life Ins. Co. v. Taylor*,
  481 U.S. 58 (1987)....................................................................................... 17

*Michigan v. U.S. Army Corps of Engineers*,
  667 F.3d 765 (7th Cir. 2011) ...................................................................... 23

*Mikulski v. Centerior Energy Corp.*,
  501 F.3d 555 (6th Cir. 2007) ......................................................... 7, 12, 17

*Miller v. Bruenger,*
   949 F.3d 986 (6th Cir. 2020) ................................................................ 7, 17

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,*
   471 U.S. 845 (1985) ............................................................................... 19

*Native Village of Kivalina v. ExxonMobil Corp.,*
   696 F.3d 849 (9th Cir. 2012) ............................................................... 19

*Nessel ex rel. Michigan v. AmeriGas Partners, L.P.,*
   954 F.3d 831 (6th Cir. 2020) ................................................................. 6

*Nevada v. Bank of Am. Corp.,*
   672 F.3d 661 (9th Cir. 2012) ................................................................. 6

*New Hampshire Ins. Co. v. Home Sav. & Loan Co. of Youngstown, Ohio,*
   581 F.3d 420 (6th Cir. 2009) ............................................................... 28

*New Mexico ex rel. Balderas v. Monsanto Co.,*
   454 F. Supp. 3d 1132 (D.N.M. 2020) ............................................. 19, 20

*Norfolk S. Ry. Co. v. Kirby,*
   543 U.S. 14 (2004) ............................................................................... 28

*Ohio ex rel. Skaggs v. Brunner,*
   629 F.3d 527 (6th Cir. 2010) ............................................................. 9, 11

*Olympic Pipe Line Co. v. City of Seattle,*
   437 F.3d 872 (9th Cir. 2006) ................................................................. 9

*Palkow v. CSX Transp., Inc.,*
   431 F.3d 543 (6th Cir. 2005) ............................................................... 18

*Patrickson v. Dole Food Co.,*
   251 F. 3d 795 (9th Cir. 2001) ............................................................. 25

*Paul v. Kaiser Found. Health Plan of Ohio,*
   701 F.3d 514 (6th Cir. 2012) ............................................................... 17

*Perna v. Health One Credit Union,*
   983 F.3d 258 (6th Cir. 2020) ................................................................. 6

*Pet Quarters, Inc. v. Depository Trust & Clearing Corp.,*
   559 F.3d 772 (8th Cir. 2009) ............................................................... 10

*Pressl v. Appalachian Power Co.,*
   842 F.3d 299 (4th Cir. 2016) ............................................................... 14

*Republic of Iraq v. First Nat'l City Bank,*
　　353 F.2d 47 (2d Cir. 1965) ........................................................................ 24

*Republic of Philippines v. Marcos,*
　　806 F.2d 344 (2d Cir. 1986) ...................................................................... 24

*Rhode Island v. Chevron Corp.,*
　　393 F. Supp. 3d 142 (D.R.I. 2019), *aff'd in part, appeal dismissed in part,* 979 F.3d 50
　　(1st Cir. 2020) ............................................................................................ 14

*Ripley v. Foster Wheeler*, LLC,
　　841 F.3d 207 (4th Cir. 2016) ...................................................................... 26

*Roddy v. Grand Trunk W. R.R. Inc.,*
　　395 F.3d 318, 323 (6th Cir. 2005) .............................................................. 16

*Rodriguez v. Fed. Deposit Ins. Corp.,*
　　140 S. Ct. 713 (2020) .................................................................................. 21

*Sam L. Majors Jewelers v. ABX, Inc.,*
　　117 F.3d 922 (5th Cir. 1997) ...................................................................... 21

*Sawyer v. Foster Wheeler LLC,*
　　860 F.3d 249 (4th Cir. 2017) ...................................................................... 26

*Tex. Indus., Inc. v. Radcliff Materials,*
　　451 U.S. 630 (1981) ............................................................................. 19, 21

*The Belfast,*
　　74 U.S. 624 (1868) ...................................................................................... 27

*Torres v. S. Peru Copper Corp.,*
　　113 F.3d 540 (5th Cir. 1997) ...................................................................... 24

*Vaden v. Discover Bank,*
　　556 U.S. 49 (2009) ........................................................................................ 6

*Waldock v. Rover Pipeline LLC,*
　　2017 WL 3224573 (N.D. Ohio July 31, 2017) ..................................... 11, 14

*Warner v. Ford Motor Co.,*
　　46 F.3d 531 (6th Cir. 1995) ........................................................................ 16

*Warren Boyeson & Christine Boyeson v. South Carolina Electricity & Gas Co,*
　　2016 WL 1578950 (D.S.C. Apr. 20, 2016)................................................. 10

*Watson v. Philip Morris Cos.,*
　　551 U.S. 142 (2007) ............................................................................. 25, 26

*Wayne v. DHL Worldwide Express,*
  94 F.3d 1179 (9th Cir. 2002) ................................................................................ 21

*West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.,*
  646 F.3d 169 (4th Cir. 2011) ........................................................................... 6, 10

*Wheeldin v. Wheeler,*
  373 U.S. 647 (1963) ............................................................................................. 21

*Williams Pipe Line Co. v. City of Mounds View, Minn.,*
  651 F. Supp. 551 (D. Minn. 1987) ......................................................................... 9

*Woodward Governor Co. v. Curtiss Wright Flight Systems, Inc.,*
  164 F.3d 123 (2nd Cir. 1999) .............................................................................. 22

**Statutes**

15 U.S.C. § 717f ....................................................................................................... 16

28 U.S.C. § 1331 ........................................................................................................ 6

28 U.S.C. § 1441(a) ................................................................................................ 5, 6

28 U.S.C. § 1442(a)(1) ...................................................................................... 25, 29

28 U.S.C. § 1447(c) .............................................................................................. 5, 29

46 U.S.C. § 30101(a) ............................................................................................... 28

49 U.S.C. § 60104(e) ......................................................................................... 16, 27

49 U.S.C. § 60121(d) ............................................................................................... 18

**Constitutional Provisions**

U.S. Const. art. III, § 2 ............................................................................................ 20

## CONCISE STATEMENT OF ISSUES PRESENTED

1.   Does this Court have jurisdiction under the substantial federal question exception to the well-pleaded complaint rule, where the Complaint pleads only state law claims and neither refers to nor relies on any federal statute or any duty created by federal law?

2.   Does this Court have jurisdiction under federal common law, where there is no "federal common law" exception to the well-pleaded complaint rule and this lawsuit does not implicate uniquely federal interests?

3.   Does this Court have jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), where the Notice of Removal alleges only acts of regulatory compliance that have nothing to do with the claims alleged in the Complaint?

4.   Is this an admiralty case within the Court's original jurisdiction under 46 U.S.C. § 30101(a), where the Complaint does not sound in tort and the Easement Agreement at issue does not concern maritime commerce?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>*Authority*</u>:    *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)

                *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007)

                *Gunn v. Minton,* 568 U.S. 251 (2013)

                *Miller v. Bruenger*, 949 F.3d 986 (6th Cir. 2020)

                *Tex. Indus., Inc. v. Radcliff Materials*, 451 U.S. 630 (1981)

                *Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007)

                Pipeline Safety Act*,* 49 U.S.C. § 60104(e)

# INTRODUCTION

This case involves matters of enormous consequence to the State of Michigan: its sovereign right to control the use of State-owned Great Lakes bottomlands, its duty under the public trust doctrine to protect public rights in the Great Lakes and submerged lands, and its right to enforce the terms of contractual agreements between the State and the Defendants (Enbridge). None of those weighty issues of state law warrant removal of this action to federal court. Instead, they must be resolved by the state courts of Michigan, where this action was originally filed.

The State pleads claims exclusively under state law, alleging that it properly revoked and terminated Enbridge's Easement in the Straits of Mackinac for violations of both the public trust doctrine and the conditions and terms of the Easement. Although Enbridge tries to force this action into one of the narrow exceptions to the well-pleaded complaint rule, it cannot. The State's claims do not necessarily raise any issues of federal law (much less substantial ones), and federal question jurisdiction cannot rest on Enbridge's litany of ordinary preemption defenses. Nor can Enbridge remove on the basis of federal common law, which bears no relation to the Complaint and which—at any rate—does not transmute state law claims into federal ones for purposes of jurisdiction. Even if Enbridge was correct that federal common law "governs" the State's claims, and it does not, that too would at most present a run-of-the-mill federal preemption defense that is entrusted to the state court to adjudicate on remand. The Notice of Removal fails the requirements of federal officer jurisdiction, and this case does not fall within the scope of admiralty jurisdiction because the contractual agreements that give rise to this litigation do not concern maritime commerce. Accordingly, this Court must remand the case to state court, where it belongs.

## FACTUAL BACKGROUND—THE STATE'S COMPLAINT

On November 13, 2020, the State issued its Notice of Revocation and Termination of Easement to Enbridge.  (Notice, ECF No. 1-1, PageID.53–72.)  The Notice, effective 180 days from that date, revoked the 1953 Easement based upon violation of the common law public trust doctrine and terminated the Easement based upon Enbridge's repeated and incurable violations of its terms.  (*Id.*)  It also determined that those actions were not precluded by the December 2018 Third Agreement between the State and Enbridge.  (*Id.*)  The State contemporaneously filed its Complaint for Declaratory and Injunctive Relief in this case, *State of Michigan, et al v. Enbridge Energy Ltd. Partnership, et al.*, in the Ingham County Circuit Court, Case No. 20-646-CE.  (Compl., ECF No. 1-1, PageID.19–37.)  Enbridge then removed the case to this Court, asserting four grounds for removal in its Notice of Removal (Notice of Removal, ECF No. 1, PageID.1–14.) and Amended Notice of Removal (ECF No. 12, PageID.237–249).

The Complaint is founded exclusively on state law and addresses the legal validity of and Enbridge's compliance with the 1953 Easement Agreement.  (Compl., ECF No. 1-1, PageID.20 and Ex. 1, ECF No. 1-1, PageID.38–51.)  It seeks declaratory relief to uphold the Notice of Revocation and Termination of Easement (Compl. Ex. 2, ECF No.1-1, PageID.21 and PageID.52–72.)  The Complaint also seeks injunctive relief requiring Enbridge to comply with the Notice requirements that it cease operation of the Straits Pipelines within 180 days from the Notice and thereafter decommission them.  (Compl., ECF No. 1-1, PageID.37.)

### A.     Count I

Count I of the Complaint, like § I of the Notice, which it incorporates, is based upon the Michigan common law public trust doctrine.  (Compl., ECF No. 1-1, PageID.26–27.)  Count I alleges that the Notice properly revoked the 1953 Easement because Enbridge's operation of the Straits Pipelines violates the public trust doctrine in two ways.  First, and consistent with Section

I.B. of the Notice, it alleges that the 1953 Easement was void from its inception because it transferred interests in Great Lakes bottomlands to Enbridge's predecessor in the absence of due findings required under the public trust doctrine.  (Compl., ECF No. 1-1, PageID.26.)

Second, Count I incorporates Section I.C. of the Notice and alleges that the Notice properly revoked the Easement because continued operation of the Straits Pipelines violates the public trust doctrine given the Pipelines' location at a uniquely sensitive place in the Great Lakes.  (Compl. ¶ 33, ECF No. 1-1, PageID.27.)

As explained in Section I.C. of the Notice, even assuming the 1953 Easement was initially valid, it "remains subject to the public trust and the State's continuing duty to protect the Great Lakes public trust resources."  (*Id.*)  The Notice emphasized the exceptionally vulnerable location of the Straits Pipelines, which lay exposed on the bottomlands in an area that sees heavy shipping activity, thus creating the risk of anchor strikes and other physical hazards.  (Notice, ECF No. 1-1, PageID.58.)

The Notice also emphasized the tremendous public importance and ecological sensitivity of the Straits and surrounding areas and the devastating consequences of an oil spill or release at that location.  (Notice, ECF No. 1-1, PageID.59–61.)

Notably, Count I does not seek to change the manner in which Enbridge may continue to operate the Straits Pipelines, or to impose any sort of pipeline safety standard on such operation. Instead, it seeks to uphold the State's decision to revoke the Easement, and thus prohibit the Pipelines' continued operation, because of where they are located.[1]

---

[1] It is also noteworthy that the allegations in Count I regarding the invalidity of the Easement under the public trust doctrine closely parallel those made in Counts I.A. and I.B. in a related case pending in state court, *Nessel v. Enbridge Energy, et al.,* Ingham County Circuit Court No. 19-474-CE.  (Compl., ECF No. 1-1, Page ID.9.)  Enbridge did not remove that case to federal

**B.     Count II**

Count II of the Complaint, like § II of the Notice, which it incorporates, is based upon the contractual terms and conditions of the 1953 Easement Agreement itself.  Count II alleges that the State properly terminated the 1953 Easement because of Enbridge's repeated and incurable violations of the Easement's terms and conditions.  (Compl., ECF No. 1-1, PageID.27–32.)

As stated in the Notice, the 1953 Easement obligates the Grantee to at all times exercise "due care," and imposes other specific compliance obligations that were addressed in the Notice. (Notice, ECF No. 1-1, PageID.64.)  The Complaint alleges that Enbridge persistently violated each of those specific conditions and associated due care obligations.  (Compl. ¶¶ 37–40, ECF No. 1-1, PageID.28–30.)  The Complaint further alleges that Enbridge's continued operation of the Straits Pipelines under the present circumstances violates its obligation to exercise due care. (Compl. ¶ 41, ECF No. 1-1, PageID.30–31.)  Finally, Count II alleges that Enbridge's violations of the Easement cannot be corrected and that the State properly terminated it pursuant to the terms of the Easement itself.  (Compl. ¶¶ 42–44, ECF No 1-1, PageID.31–32.)

Like Count I, Count II does not seek to change the manner in which Enbridge may continue to operate the Straits Pipelines, or to impose any form of safety standard on such operation.  Instead, it seeks to terminate the Easement Agreement and Enbridge's operation of the Straits Pipelines, based upon Enbridge's repeated violations of its terms, including the unreasonable risks now apparent because of the Pipelines' location.

---

court and has briefed the merits of its statutory preemption and other defenses in dispositive motions that are under consideration by that court.

### C.      Count III

Count III addresses the legal effect of the December 2018 Third Agreement between former State officials and Enbridge, as it relates to the Notice of Revocation and Termination of Easement.  (Compl. Ex. 3, ECF No. 1-1, PageID.87–107.)  Count III seeks a declaratory judgment that the Notice properly determined that the Third Agreement does not preclude the revocation and termination of the 1953 Easement.  (Compl., ECF No. 1-1, PageID.32–36.)  Count III is based on the terms of the Third Agreement and presents only state law issues of contract interpretation.

## ARGUMENT

### I.      Enbridge has the burden of establishing federal court jurisdiction.

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute."  *Gunn v. Minton,* 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))*.*  As the party seeking removal, Enbridge bears the burden of establishing federal court jurisdiction, *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006), and of demonstrating that removal is proper. 28 U.S.C. § 1441(a).  Because removal statutes implicate federalism concerns, they must be strictly construed, and "all doubts should be resolved against removal."  *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007); *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000); *see also Eastman*, 438 F.3d at 550.  Once a district court determines that it lacks jurisdiction over a removed action, remand is mandatory.  *See* 28 U.S.C. § 1447(c).

Based on the same considerations of federalism and comity, "[t]he Supreme Court has long cautioned against 'snatch[ing] cases which a State has brought from the courts of that State, unless some clear rule demands it.'"  *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954

F.3d 831, 837 (6th Cir. 2020) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983)).  Thus, where a sovereign state has alleged "only state law causes of action" in its own courts "to protect [its] residents . . . the 'claim of sovereign protection from removal arises in its most powerful form.'"  *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012) (quoting *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011)).

## II.    This case does not "arise under" federal law for purposes of 28 U.S.C. § 1331.

The well-pleaded complaint rule "governs whether a case is removable" under 28 U.S.C. § 1441(a) because it "arises under federal law for purposes of [28 U.S.C. § 1331]."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 & n.2 (2002).  The rule is a "powerful doctrine" that "severely limits the number of cases in which state law 'creates the cause of action' that may be initiated in or removed to federal district court."  *Franchise Tax Bd.*, 463 U.S. at 9–10.  Under it, "a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law."  *Perna v. Health One Credit Union*, 983 F.3d 258, 268 (6th Cir. 2020).  As a result, federal "jurisdiction may not be sustained on a theory that the plaintiff has not advanced."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003).  Nor can it rest on "an actual or anticipated defense," *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009), even if "both parties admit that the *only question* for decision is raised by a federal preemption defense," *Franchise Tax Bd.*, 463 U.S. at 12 (emphasis added).  Instead, "the plaintiff [is] the master of the claim," and "he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

In "the vast bulk of suits" "a case arises under federal law when federal law creates the cause of action asserted."  *Gunn*, 568 U.S. at 257 (citations omitted).  This case is not one of

them, as the State seeks declaratory and injunctive relief under state law only.  Nor, as discussed

below, does the State's Complaint fall within the two primary exceptions to the well-pleaded

complaint rule: (1) the "substantial federal question" doctrine, and (2) the "[c]omplete

preemption" doctrine.  *Miller v. Bruenger*, 949 F.3d 986, 992, 994 (6th Cir. 2020).  The Court

therefore does not have jurisdiction over this action under Sections 1331 and 1441(a).

Application of the well-pleaded complaint rule to the State's Complaint is

straightforward, as none of the State's causes of action rely on federal law in any way.  Count I

calls for application of Michigan's common law public trust doctrine.  Count II requires

interpretation of the terms of an easement.  And Count III requires interpretation of an agreement

between the State and Enbridge.  These are all matters of pure state law that fall squarely within

the jurisdiction of Michigan courts.  The issues raised by Enbridge as grounds for federal

jurisdiction—alleged statutory preemption, interstate and foreign commerce, and foreign affairs

and treaties—are simply its defenses, not elements of the State's claims.

### A.    Enbridge cannot establish jurisdiction here under the "substantial federal question" exception to the well-pleaded complaint rule.

Without mentioning the well-pleaded complaint rule, Enbridge's Notice of Removal

attempts to overcome it by relying on the rarely applied "substantial federal question" exception.

To qualify for this exception, the federal issue within a state law claim must be: "(1) necessarily

raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.[2]  An action

must meet each of these requirements to fall within the jurisdiction of federal courts.

---

[2] The Sixth Circuit combines the first two prongs of this test, requiring that an action
"necessarily raise a disputed federal issue."  *Mikulski*, 501 F.3d at 568.

Enbridge's application of this exception selectively relies on broad language from *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).  The Supreme Court has since clarified that *Grable* represents a "special and small category of cases" that generally do not involve "fact-bound and situation-specific" disputes.  *Gunn*, 568 U.S. at 263 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)).

*Grable* itself illustrates the type of unusual circumstances in which the substantial federal question rule may apply.  In that case, the IRS seized the plaintiff's (Grable's) property to satisfy a tax delinquency.  545 U.S. at 310–11.  The IRS sold the property to the defendant (Darue).  *Id.* Grable later sued Darue, arguing that, "Darue's record title was invalid because the IRS had conveyed the seizure notice improperly."  *Empire Healthchoice*, 547 U.S. at 700 (citing *Grable*, 545 U.S. at 311).  Although the suit was a quiet title action under state law, the *only question* at issue was whether the IRS had properly followed federal law in seizing Grable's property.

The dispute in *Grable* met each of the "substantial federal question" requirements.  First, the resolution of the federal issue was necessary to the plaintiff's claims:  Grable could not prove his claim unless the court found that the IRS had failed to follow federal law.  *Grable*, 545 U.S. at 315.  Second, that issue was disputed, as both sides put forth conflicting interpretations of the relevant federal statute.  *Id.*  Third, the issue was substantial because, among other things, it "centered on the action of a federal agency (IRS)" and any decision "would be controlling in numerous other cases."  *Empire Healthchoice*, 547 U.S. at 700.  And fourth, because of the unusual nature of the case, allowing for federal jurisdiction in *Grable* did not threaten to disrupt the "balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314.

Here, in contrast to *Grable*, Enbridge's invocation of the substantial federal question exception satisfies none of the requirements.

### 1.   No federal issue is necessarily raised by the State's claims.

Enbridge founders on the first prong of the substantial federal question test.  As the case law makes clear, a lawsuit necessarily raises a federal issue only if that issue is an "essential element" of the plaintiff's claim.  *Grable*, 545 U.S. at 315; *see also Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527, 531 (6th Cir. 2010) (requiring the "federal issue" to be "embedded in . . . the state-law claims").  In its Notice of Removal, however, Enbridge merely lists a host of federal and international issues relating to "interstate and foreign commerce, foreign affairs, energy policy, environmental protection, and the safety of interstate pipelines."  (Notice ¶ 12, ECF No. 1, PageID.6).  It does not take the next step of showing that those issues are "necessary elements" of the State's causes of action.  *See Fried v. Sanders*, 783 F. App'x 532, 536 (6th Cir. 2019).

Nor could it, because the State can prove all of its claims without reference to any body of federal law.  To prevail on Count I, the State must demonstrate that the 1953 Easement violates Michigan's public trust doctrine, a creature of state common law.  *Glass v. Goeckel*, 703 N.W.2d 58, 63–64 (Mich. 2005) (tracing the doctrine's roots to English common law).  Counts II and III, in turn, rest entirely on the application of state contract law to the terms and conditions of the 1953 Easement Agreement and the 2018 Third Agreement.

None of Enbridge's citations on this point lead to a contrary conclusion.  Indeed, many do not even address removal jurisdiction.[3]  The remainder are plainly distinguishable.  In *Warren*

---

[3] *See, e.g.*, *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 370 (2000); *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 209 (4th Cir. 2012); *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 877 (9th Cir. 2006); *Kinley Corp. v. Iowa Utilities Bd., Utilities Div., Dep't of Com.*, 999 F.2d 354, 357 (8th Cir. 1993); *Williams Pipe Line Co. v. City of Mounds View, Minn.*, 651 F. Supp. 551, 553 n.1 (D. Minn. 1987); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001).

*Boyeson & Christine Boyeson v. South Carolina Electricity & Gas Co.*, for example, the court found that the defendant's duty of care derived from federal law because it was defined by a license issued by the Federal Energy Regulatory Commission.  2016 WL 1578950, at *6 (D.S.C. Apr. 20, 2016).  Similarly, in *Board of Commissioners of Southeast Louisiana Flood Protection Authority East v. Tennessee Gas Pipeline Co.*, the court reached the same conclusion after determining that the plaintiff's tort claims rested on "a duty of care" that did not "exist under state law."  850 F.3d 714, 723 (5th Cir. 2017).  Here, by contrast, no federal entity was a party to the agreements, and all of the relevant rights and obligations are created by state contract and property law.

As for *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, the plaintiff expressly premised one of its state law claims on the theory that the federal "Stock Borrow Program, *by its mere existence*, hinders competition," which the court held necessarily challenged the decisions of the SEC approving and overseeing that program.  559 F.3d 772, 779 (8th Cir. 2009) (emphasis added).  And in *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, the plaintiff alleged "injuries arising from . . . its participation in the federal Medicaid program."  476 F. Supp. 2d 230, 233 (E.D.N.Y. 2007).  Here, of course, the State's claims do not implicitly or explicitly rest on any federal program.  Nor does the State seek to enjoin or otherwise interfere with the operation of a federal regulation, as was the case in *McKay v. City & County of San Francisco*, where the plaintiffs sought to enjoin the usage of airplane flight paths established by the Federal Aviation Administration.  *See* 2016 WL 7425927, at *1 (N.D. Cal. Dec. 23, 2016).

That leaves *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 908 (7th Cir. 2007), a case that actually favors remand of the State's lawsuit.  There, the Seventh Circuit held that federal questions were not necessarily raised in a set of negligence claims arising out of a plane crash,

despite "the dominant role that federal law plays in air transport." *Id.* at 909. The court expressly rejected the defendants' argument that "all suits about commercial air travel belong in federal court because the national government is the principal source of rules about safe air transportation, and uniform application of these norms is desirable." *Id*. Because the actual negligence duties allegedly owed by the defendants derived entirely from state law, the court declined to hold "that the national regulation of many aspects of air travel means that a tort claim in the wake of a crash 'arises under' federal law." *Id*. at 912. Enbridge raises the same line of argument that *Bennett* rejected, contending that the State's claims necessarily raise federal questions simply because they touch on matters of federal regulation. That argument is equally baseless here.

Indeed, *Waldock v. Rover Pipeline LLC*, 2017 WL 3224573 (N.D. Ohio July 31, 2017), rebuts the precise theory of federal jurisdiction that Enbridge pursues. In that case, the plaintiff landowner argued that the defendant pipeline company had created a nuisance beyond the bounds of a pipeline easement. *Waldock*, 2017 WL 3224573, at *1–2. In seeking federal jurisdiction, the defendant pointed to provisions of the Natural Gas Act (NGA) and a Federal Energy Regulatory Commission (FERC) certificate as federal issues necessary to the plaintiff's claims. *Id.* at *2–3. The court rejected that argument, noting that the plaintiff's claims "do not refer to [the defendant's] FERC Certificate, the NGA, or any other provision of federal law." *Id.* at *6. Those federal issues would enter the case "if, and only if, [defendant] injects them into it to defend against plaintiffs' claims." *Id.*; *see also Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 478 (6th Cir. 2008) (noting that the issue identified by the defendant is "at best a federal defense that the [defendant] may or may not wish to inject into the case").

Similarly, the State's claims make no reference to any of the statutes, treaties, or constitutional principles referenced in the Notice of Removal and Amended Notice of Removal. The State's case can be resolved without consideration of those federal issues; they will enter the case only if *Enbridge* raises them as defenses. These issues are therefore not "necessarily raised" by the State's claims, and the first requirement of the substantial federal question test is not satisfied. That alone is sufficient to defeat Enbridge's claim of jurisdiction under the substantial federal question exception.

### 2.    None of the federal issues Enbridge raises is substantial.

Even if Enbridge could identify a federal question that was necessarily raised by the Complaint, none would qualify as "substantial" for purposes of Section 1331 jurisdiction. Four factors inform a court's evaluation of the substantiality of the federal interest in a case:

> "(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)."

*Mikulski*, 501 F.3d at 570 (*citing Empire Healthchoice*, 547 U.S. at 700).

The Supreme Court's decision in *Empire Healthchoice* shows why any federal issues that might be implicated by this case are insubstantial. That case concerned a claim brought by an insurance company against a beneficiary who had recovered damages in a state court tort suit. *Empire Healthchoice*, 547 U.S. at 682–83. Pursuant to an insurance plan created by the Federal Employees Health Benefits Act of 1959, the plaintiff health insurance company had reimbursed medical expenses arising from the same accident that led to the personal injury action. *Id.* at 683. The insurance company brought suit in federal court, claiming that substantial federal

12

question jurisdiction was appropriate because the suit sought "to vindicate a contractual right contemplated by a federal statute." *Id.* at 690.

In evaluating the substantiality of the federal issues at play, the *Empire Healthchoice* court observed that the suit was "poles apart from *Grable*" because (1) it did not "center on the action of a federal agency"; (2) it did not "present a nearly pure issue of law" that would govern numerous subsequent cases; and (3) resolving the relevant federal issue would not be "dispositive of the case." *Id*. at 700–01.  Rather, the central issues were "fact-bound and situation-specific," relating to the extent to which the insurance company had reimbursed the defendant for medical expenses. *Id.*; *see also Gunn,* 568 U.S. at 263 ("'[F]act-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction." (quoting *Empire HealthChoice*, 547 U.S. at 701)).

The State's Complaint presents a similarly "fact-bound and situation-specific" set of issues that is highly unlikely to control in any other case. *See Columbia Gas Transmission, LLC v. Singh,* 707 F.3d 583, 590 (6th Cir. 2013) ("The proper resolution of the scope of a pipeline easement is a fact-bound inquiry that looks at the specific context of the land.")*.*  Moreover, as in *Empire Healthchoice*, the State's claims do not "center on the action" of any federal agency, nor do they depend on any federal issues to succeed. *Empire Healthchoice*, 547 U.S. at 700. Instead, the State's Complaint is focused on the invalidity of the easement that authorized the installation and operation of the Straits Pipelines on a particular portion of State-owned bottomlands, Enbridge's noncompliance with the specific terms of that easement, and the interpretation of the specific terms of another agreement between the State and Enbridge in 2018.

Enbridge attempts to cast the federal issues it raises as substantial by framing them in the broadest possible terms.  (*See, e.g.,* Notice at 6 (identifying "foreign affairs, energy policy,

13

environmental protection, and the safety of interstate pipelines" as federal issues implicated by

the State's Complaint, ECF No. 1-1, PageID.6.))  But the Supreme Court rejected exactly such

an approach in *Empire Healthchoice*, explaining that the federal government's "'overwhelming

interest in attracting able workers to the federal workforce,' and 'in the health and welfare of the

federal workers upon whom it relies to carry out its functions'" did not confer federal jurisdiction

over "a federal worker's state-court-initiated tort litigation."  *Empire Healthchoice*, 547 U.S. at

701.  Here, the federal interests identified by Enbridge do not confer federal jurisdiction over the

State's state court-initiated litigation involving the State's sovereign authority over its submerged

lands and its contractual disputes with Enbridge.

Notably, other courts have rebuffed similar attempts to inflate the federal issues

implicated by state court claims.  *See City of Oakland v. BP PLC*, 969 F.3d 895, 906–07 (9th Cir.

2020) (noting that "energy policy, national security, and foreign policy" do not constitute a legal

issue for the purposes of federal question jurisdiction);[4] *Pressl v. Appalachian Power Co.*, 842

F.3d 299, 305 (4th Cir. 2016) (commenting that while "there is a federal interest in ensuring the

effective operation of hydroelectric projects . . . resolving property disputes in state court does

not undermine that interest"); *Waldock*, 2017 WL 3224573 at *8 (denying defendant's attempt

---

[4] *See also Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020), *reh'g en banc denied* (Aug. 4, 2020), *petition for cert. filed*; *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019), *aff'd in part, appeal dismissed in part*, 952 F.3d 452 (4th Cir. 2020), *cert. granted*, 141 S. Ct. 222 (2020); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019), *aff'd in part, appeal dismissed in part*, 965 F.3d 792 (10th Cir. 2020), *petition for cert. filed*; *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019), *aff'd in part, appeal dismissed in part*, 979 F.3d 50 (1st Cir. 2020), *petition for cert. filed*; *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020); *City & Cnty. of Honolulu v. Sunoco LP*, No. 20-cv-00163-DKW-RT, 2021 WL 531237 (D. Haw. Feb. 12, 2021) (granting motion to remand in that matter and the related case of *Cnty. of Maui v. Chevron U.S.A. Inc.*, No. 20-cv-00470-DKW-KJM (D. Haw.)), *appeals filed*.

"to pump up plaintiffs' suit as posing a grave threat to 'the entire federally regulated interstate natural gas pipeline industry'").  This Court should do the same.

>    3.    **Moving this case to federal court would disrupt the congressionally approved balance of judicial responsibilities.**

The final element of the substantial federal question test prohibits disruption of the federalism values reflected in "any division of labor between the state and federal courts, provided or assumed by Congress." *Grable,* 545 U.S. at 310.

Under Enbridge's jurisdictional theory, any dispute over the terms of an easement involving an interstate pipeline could be moved to federal court, effectively conferring federal jurisdiction on a "whole category of suits" and upsetting a "conscious legislative choice." *Bennett v. South West Airlines Co.*, 484 F.3d 907, 911 (7th Cir. 2007) (finding no federal jurisdiction where it "would move a whole category of suits to federal court").

Yet, the Sixth Circuit rejected precisely such an outcome in *Columbia Gas*, which concerned a dispute between a plaintiff landowner and a defendant natural gas pipeline company over the defendant's disruptive activities beyond the scope of the easement.  *Columbia Gas*, 707 F.3d at 590–91.  There, the pipeline company argued that federal jurisdiction was appropriate because federal regulations controlled its activities on the right-of-way.  The Sixth Circuit held that substantial federal question jurisdiction was not merited, in part because "allowing for federal jurisdiction over nondiverse disputes related to pipeline rights-of-way could disrupt the congressionally approved balance of federal and state judicial responsibilities." *Id*.  Opening federal courts to such disputes "could lead to a large number of cases . . . certainly more than the 'microscopic effect' that the Supreme Court expected [in *Grable*] . . . ." *Id.* at 591.

The same reasoning applies with greater force in the context of oil pipelines, over which Congress has left a larger measure of state control.  While interstate natural gas pipeline routing

and siting is subject to federal control under the Natural Gas Act, Congress has left the states in charge of those issues with respect to oil pipelines such as those at issue here.  *Compare* 15 U.S.C. § 717f (providing natural gas pipeline developers with federal eminent domain authority following FERC approval) *with* 49 U.S.C. § 60104(e) ("This chapter does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility.").

As such, a company seeking to establish a right-of-way for an oil pipeline must rely on state law if it wishes to exercise the power of eminent domain.  And if it intends to cross state land, as the Straits Pipelines do, it must have a valid easement from the state.  Congress made a "conscious legislative choice" not to claim federal jurisdiction over such matters, *Bennett,* 484 F.3d at 911; moving them to federal court would disturb that balance.

**B.     Enbridge's preemption arguments fall short of the requirements of the complete preemption doctrine.**

In advancing their various preemption arguments, Enbridge appears to conflate "two distinct concepts": "ordinary preemption" and "[c]omplete preemption."  *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 323 (6th Cir. 2005).  The former is a defense to the merits of a claim that does not "create[] the right of removal."  *Id.*  The latter is a jurisdictional doctrine that "convert[s] a state cause of action into [a] federal action for purposes of the well-pleaded complaint rule."  *Id.*; *see also Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995) (warning that courts must "distinguish carefully between ordinary and complete preemption" (quotations omitted)).

Enbridge does not expressly premise removal on complete preemption.  (*See e.g.,* Notice at 7, ECF No. 1, PageID.7 ("Congress has already weighed, and continues to weigh, the costs and benefits of pipeline transportation."); *id.* at 9, ECF No.1, PageID.9 (arguing that Pipeline Safety Act and PHMSA regulations must be "paramount"); *id.* at 11, ECF No. 1, PageID.11

16

("the grounds on which plaintiffs rely are in areas already regulated by federal agencies and as to which federal law is explicitly 'paramount'")).  Nor could it.  "Complete preemption requires a finding that the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 564 (6th Cir. 2007) (quotations omitted).  *See also Caterpillar Inc.*, 482 U.S. at 393 (complete preemption applies where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (*quoting Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  The Sixth Circuit is avowedly "reluctant" to make such a finding, given that it results in a "dramatic altering of the traditional federal-state balance." *Miller v. Bruenger*, 949 F.3d 986, 994–95 (6th Cir. 2020).  Indeed, it has routinely "declined to extend complete preemption" absent statutory language that "explicitly confers original exclusive jurisdiction on the federal district courts." *Mikulski*, 501 F.3d at 564 (quotations omitted).

Here, Enbridge wholly fails to carry "its burden of demonstrating grounds for complete preemption of [the State's] claim[s]." *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 523 (6th Cir. 2012).  Complete preemption cannot rest on Enbridge's citations to a "Presidential Permit" and various international treaties, none of which create a federal cause of action (and Enbridge does not claim otherwise).  *Mikulski*, 501 F.3d at 564 (statutory scheme at issue must provide "the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.") (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8).  It cannot stand on *Garamendi*, 539 U.S. 396, and the judge-made doctrine of foreign affairs preemption, as "only Congress can completely preempt a state cause of action." *AmSouth Bank*

*v. Dale*, 386 F.3d 763, 776–77 (6th Cir. 2004).  And it cannot arise from the Pipeline Safety Act,

which explicitly preserves claims other than those for violations of the Act itself.  49 U.S.C.

§ 60121(d); *see also Johnson v. Am. Towers, LLC*, 781 F.3d 693, 703 (4th Cir. 2015) ("[A]

savings clause demonstrates that congressional intent to completely preempt this area of law is

neither clear nor manifest.").  As a result, even if Enbridge's Notice of Removal could be

construed as asserting complete preemption (it cannot), the State's lawsuit plainly does not fall

within this "very limited exception to the well-pleaded complaint rule."  *Palkow v. CSX Transp.,

Inc.*, 431 F.3d 543, 553 (6th Cir. 2005).

### C.    Federal common law does not provide a separate basis for removal.

Enbridge's claim that this Court has jurisdiction because the State's Complaint arises

under federal common law (Amended Notice of Removal, ¶¶ 5–23, ECF 12 PageID.239–246)

fails for at least two fundamental reasons:  it ignores the well-pleaded complaint rule, and it

exaggerates the scope of federal common law.

### 1.    Enbridge ignores the well-pleaded complaint rule.

Enbridge completely ignores the well-pleaded complaint rule, *Caterpillar,* 482 U.S. at

392, and impermissibly attempts to re-write the State's Complaint.  Federal circuit and district

courts across the country have recently rejected arguments indistinguishable from Enbridge's

here, where the defendants argued that the plaintiffs' state law claims were removable because

they supposedly arose under the federal common law of interstate nuisance and implicated other

federal common law doctrines.  *See Oakland*, 969 F.3d at 906 ("Even assuming that the Cities'

allegations could give rise to a cognizable claim for public nuisance under federal common law

. . . the district court did not have jurisdiction under § 1331 because the state-law claim . . . fails

to raise a substantial federal question."); *Boulder,* 405 F. Supp. 3d at 957–62; *Baltimore*, 388 F.

Supp. 3d at 554–57; *Rhode Island*, 393 F. Supp. 3d at 148–49;  *Earth Island Institute v. Crystal*

*Geyser Water Co.*, No. 20-CV-02212-HSG, 2021 WL 684961 (N.D. Cal. Feb. 23, 2021) (finding

the defendants' "creative argument" that the plaintiff's California nuisance claims arose under

federal common law "to be inconsistent with the well-pleaded complaint rule and longstanding

controlling authority"); *New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132,

1152 (D.N.M. 2020) ("[F]ederal common law—even if it did apply to this case—cannot support

removal to federal court without complete preemption.").

      In those cases, as here, the plaintiffs' state court complaints plead only state law claims.

And, as here, the defendants asserted that the plaintiffs' claims arose under federal common law

because the case implicated "matters of uniquely national importance, including energy policy,

environmental protection, and foreign affairs."  *E.g.*, *Boulder*, 405 F. Supp 3d at 957.  Indeed,

the defendants in each of those cases relied almost entirely upon the same authority discussing

federal common law cited here by Enbridge, including *Nat'l Farmers Union Ins. Cos. v. Crow*

*Tribe of Indians*, 471 U.S. 845, 850 (1985); *Illinois v. City of Milwaukee*, 406 U.S. 91, 100

(1972); *Tex. Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, (1981); *Boyle v. United Techs.,*

*Corp*., 487 U.S. 500, (1988); *American Electric Power Co. v. Connecticut*, 564 U.S. 410 (2011);

*Native Village of Kivalina v. ExxonMobil Corp*., 696 F.3d 849 (9th Cir. 2012).

      Each of the cases on which Enbridge relies is distinguishable, however, for the simple

reason that each of them was filed in federal court expressly under federal law.  None of them

analyzed removal jurisdiction at all, and none stand for the proposition that a court is free to

disregard the well-pleaded complaint rule and exert jurisdiction over a case involving entirely

state law claims any time a defendant asserts that federal common law "controls."  In *City of*

*Milwaukee*, for example, the State of Illinois brought claims under federal common law against

Wisconsin municipal entities directly in the Supreme Court, seeking to exercise the Court's

original jurisdiction.  *See* 406 U.S. at 93; U.S. Const. art. III, § 2, cl. 2 ("In all Cases . . . in which

a State shall be Party, the supreme Court shall have original Jurisdiction.").  The Court analyzed

whether such a claim was cognizable in federal district court under federal common law, and did

not consider any question of removal jurisdiction—let alone whether or when a complaint

alleging similar injuries under state law might have been removable.

The district court in *Earth Island Institute* recently explained why that distinction renders

Enbridge's reliance on *City of Milwaukee* and similar cases inapposite:

> Cases about whether a federal common law right *exists* (i.e., may a plaintiff
> bring a federal common law nuisance action if it wishes?) have limited
> application here, where Plaintiff intentionally seeks to *avoid* invoking
> federal common law (or any other federal law).  Defendants essentially
> argue that Plaintiff's claims must be assessed with reference to federal
> common law, but it is not even clear to the Court what the standards for
> such a claim would be.  So while the best answer the Court can muster to
> the question of whether Plaintiff could have brought a federal common law
> claim here if it wanted to do so is "perhaps," that is not really the right
> question given the posture of this case . . . . Instead, the key question is
> whether federal common law, even assuming it still exists, completely
> displaces Plaintiff's state law claims.

2021 WL 684961, at *4 (citation omitted).  Every court that has addressed that key question has

held that it "must reject Defendants' request for displacement of the well-pleaded state law

claims in Plaintiff's complaint by federal common law."  *Id.* at *7; *see also Boulder*, 405 F.

Supp. 3d at 963 ("Defendants cite no controlling authority for the proposition that removal may

be based on the existence of an unplead federal common law claim."); *New Mexico*, 454 F. Supp.

3d at 1151 ("Monsanto does not offer any legal authority for the proposition that federal

common law confers federal removal jurisdiction, and case law is to the contrary.").  The well-

pleaded complaint rule requires the same result here.

Two other cases cited by Enbridge, *Sam L. Majors Jewelers v. ABX, Inc*., 117 F.3d 922 (5th Cir. 1997), and *Wayne v. DHL Worldwide Express*, 294 F.3d 1179 (9th Cir. 2002), did involve removal, but are neither persuasive nor controlling here.  Both cases involved claims against interstate air carriers for parcels lost in transit, and the courts determined after a lengthy analysis that "prior to deregulation" of the air travel industry, "private civil suits against air carriers for lost or damaged goods arose under federal common law that either survived *Erie* or was developed after *Erie* to serve a particular federal interest."  *Sam L. Majors*, 117 F.3d at 928. Importantly, the Airline Deregulation Act of 1978 contained a savings clause that expressly preserved the prior federal common law cause of action, which the courts found illustrated Congress's intent that such causes of action would continue to arise under and be governed by the federal common law.  *Id.* at 928–29.

Accordingly, the Court should abide by the well-pleaded complaint rule and find that Enbridge's generic allegations of federal interests are insufficient to convert a state law claim into a federal law claim and establish federal jurisdiction.

### 2.      Enbridge exaggerates the scope of federal common law and fundamentally mischaracterizes the subject of the State's Complaint.

Even if federal common law could provide an independent basis for removal in the abstract, no body of federal common law is even implicated here.  The instances where federal common law exists are "few and restricted."  *Wheeldin v. Wheeler*, 373 U.S. 647, 561 (1963). The Supreme Court has likewise recently reaffirmed that "before federal judges may claim a new area for common lawmaking, strict conditions must be satisfied," "one of the most basic" of which is that "common lawmaking must be '*necessary to protect* uniquely federal interests.'" *Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713, 717 (2020) (emphasis added) (quoting *Tex.*

*Indus.*, 451 U.S. at 640).  In claiming that the State's Complaint implicates uniquely federal interests, Enbridge fundamentally and repeatedly distorts its actual content.

As explained above, the Complaint raises two subjects.  The first, included in Count I, is the legality of the location of the Straits Pipelines on State-owned public trust bottomlands.  This is plainly not a "uniquely federal interest."  On the contrary, the Supreme Court has long held that public trust bottomlands belong to and are controlled by the states and specifically declared that ownership and control are "a function of [the state's] sovereignty."  *Illinois Cent. R. Co. v. State of Illinois*, 146 U.S. 387, 452–453 (1892).  Moreover, in the Pipeline Safety Act, Congress has explicitly excluded the location and routing of petroleum pipelines from federal regulation. 49 U.S.C. § 60104(e).  Where, as here, a federal statute speaks to the subject, there is no federal common law.  *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 423–424 (2011).

The second subject of the Complaint, included in both Counts II and III, is the interpretation and enforcement of contracts between the State and Enbridge.  Again, this is not a subject of "uniquely federal interest."  Federal common law is very rarely applied to contract disputes unless the federal government is itself a party, or truly unique circumstances are presented.  *See e.g.*, *Boyle v. United Techs. Corp* 487 U.S. at 505 (recognizing a military contractor defense based upon the federal interest in the civil liability of federal officials for action taken in the line of duty).  *See also, Woodward Governor Co. v. Curtiss Wright Flight Systems, Inc.,* 164 F.3d 123, 126–128 (2nd Cir. 1999) and cases cited therein.

Enbridge claims that the State's Complaint "implicates" three "uniquely federal interests" and thus supposedly arises under federal common law (Amended Notice of Removal ECF 12, PageID.239).  In each instance, Enbridge exaggerates the scope of the purportedly relevant federal common law and mischaracterizes the Complaint.

First, Enbridge argues that federal common law applies because it arises from "navigable waters of the United States."  (Amended Notice of Removal ¶¶ 10–13, ECF No. 12, PageID.241–242).  Enbridge principally relies on *Illinois v. City of Milwaukee*, 406 U.S. 91 (1972).  While that case referred at one point to "pollution of interstate and navigable waters," *id*. at 99, it did not, as Enbridge appears to suggest, hold that any pollution of "navigable" waters is governed by federal common law.  Instead, the actual holding of the case was plainly that Illinois's suit against municipalities in Wisconsin to abate interstate water pollution stemming from activities in Wisconsin was cognizable under federal common law.  *Id*. at 105–108.  Similarly, the discussion of federal common law in *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765 (7th Cir. 2011), was not based on "navigable waters."  Instead, it referred to common law suits brought by one state to abate pollution emanating from another state, "*interstate* disputes over a nuisance" and "*interstate* nuisances."  *Id*. at 770 (emphasis added).

Here, the subject of the Complaint is the 1953 Easement Agreement that authorized the placement of the Straits Pipelines on Great Lakes bottomlands in the Straits of Mackinac.  While the Straits Pipelines are located in navigable waters, they are located entirely within the boundaries of the State of Michigan.  The threat of water pollution that they present at that location is *intrastate* rather than interstate in nature.  This is not a situation, like that involved in *City of Milwaukee*, where the gravamen of the complaint is that activity in another state (e.g. Wisconsin, Illinois, or Indiana) has caused, or is threatening to cause pollution in Michigan and the complaint seeks to enjoin that out-of-state activity.  The State's public trust and contract claims do not arise from federal common law.

Second, Enbridge erroneously maintains that the State's claims implicate uniquely federal interests in international affairs and commerce and must therefore be based on federal

23

common law.  (Amended Notice, ECF No. 12, PageID.243–245.)  Yet, the focus of the Complaint is the location of an approximately four-mile-long segment of Enbridge's Line 5—the Straits Pipelines.  Other than noting that Line 5 as a whole originates and terminates outside Michigan, nothing in the Complaint alleges, or even suggests, that the origin or destination of petroleum transported is the basis of the Complaint or the relief sought.

Enbridge's theory would radically expand the scope of federal jurisdiction.  In their view, any lawsuit involving any part of Lake Michigan or any of the Great Lakes, and any lawsuit that might involve industries or investments subject in some respect to the United States-Mexico-Canada Agreement (which is many of them), gives rise to federal jurisdiction.  (Amended Notice ¶ 17 (citing to Notice at 13-14), 18, ECF No.12 PageID.244.)  This is an extraordinary view of § 1331 jurisdiction, and none of the cases Enbridge cites support it in any way.  In *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 425 (1964), *Republic of Iraq v. First Nat'l City Bank*, 353 F.2d 47, 50 (2d Cir. 1965) and *Republic of Philippines v. Marcos*, 806 F.2d 344, 352 (2d Cir. 1986), the act of a foreign government was at issue and the foreign government was a party to the litigation.  *Japan Line, Ltd. v. Cty. of Los Angeles*, 441 U.S. 434 (1979) involved a challenge to a state statute that affected the collection of taxes by a foreign government.  And, once again, none of these cases involved a question of removal jurisdiction—each was filed in federal court in the first instance.  *Torres v. S. Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997), did involve removal based upon the substantial federal question doctrine, but the court emphasized that the lawsuit directly struck at "Peru's sovereign interests by seeking damages for activities and policies in which the government actively has been engaged," and in fact "the state of Peru ha[d] protested the lawsuit by filing a letter with the State Department and by submitting an amicus brief to th[e] court." *Id*. at 543.  These are not the circumstances alleged in or raised by

24

the State's Complaint.  Notably, another circuit criticized and declined to follow the analysis in *Torres.  See Patrickson v. Dole Food Co.*, 251 F. 3d 795, 803 (9th Cir. 2001).

Finally, Enbridge mistakenly argues that federal common law applies here on the theory that the Complaint implicates "uniquely federal interests" in "claims of environmental protection from interstate and international sources."  (ECF No.12, PageID.245–256.)  Contrary to Enbridge's assertion, the gravamen of the complaint is not "that petroleum *being transported from interstate and international sources* could spill into the Straits, resulting in environmental damage to the Great Lakes."  (ECF No. 12, PageID.256, *emphasis added*.)  As noted above, neither the allegations of the Complaint nor the relief sought are based upon the origin of petroleum being transported through the Straits Pipelines.

In sum, Enbridge's federal common law arguments are wholly without merit.

**III.    Removal is not proper under 28 U.S.C. § 1442(a)(1) because Enbridge is not "acting under" a federal officer, and the actions for which it is being sued were not taken under color of federal office.**

Nor can Enbridge shoehorn this case into federal court based on federal officer jurisdiction.  To remove under 28 U.S.C. § 1442(a)(1), a private defendant must demonstrate (1) that it "acted under a federal officer," (2) that it "performed the actions for which it is being sued under color of federal officer," and (3) that it has "a colorable federal defense."  *Mays v. City of Flint, Mich.*, 871 F.3d 437, 442–43 (6th Cir. 2017).  Here, Enbridge flunks at least two of the three requirements of this jurisdictional test.

To satisfy the first requirement of federal officer removal, a defendant must not only show that it acted under the "subjection, guidance, or control" of a federal officer, but that it did so in "an effort to assist, or help carry out, the duties or tasks of a federal superior."  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151–52 (2007).  "Simply complying with a regulation is insufficient, even if the regulatory scheme is highly detailed and the defendant's activities are

highly supervised and monitored." *Mays*, 871 F.3d at 444 (quotations omitted).  Instead, a

defendant must identify an "unusually close" relationship with a federal officer that is "distinct

from the usual regulator/regulated relationship." *Watson*, 551 U.S. at 153, 157.  Anything less,

the Supreme Court warned, would impermissibly "expand the scope of th[is] [removal] statute

considerably, potentially bringing within its scope state-court actions filed against private firms

in many highly regulated industries." *Id.* at 153.

Enbridge identifies no "such special relationship" here.  *Id.* at 157.  Premising federal

officer jurisdiction on its relationship with PHMSA, Enbridge contends that PHMSA controlled

"the operation and safety management of the Dual Pipelines" through "extensive regulations,"

"directives," and "direct [agency] oversight."  (Notice of Removal at 12, ¶¶ 20–21, ECF No. 1,

PageID.12–13.)  Those vague allegations, however, simply describe the type of

"regulatory/regulated relationship" that the Supreme Court has found insufficient to support

federal officer jurisdiction.  *Watson*, 551 U.S. at 157 (government's "inspection and supervision

of the industry laboratory's testing" did not satisfy acting-under standard).  More fatal still,

Enbridge declines to explain how its operation of a privately owned pipeline helps PHMSA carry

out a federal "dut[y] or task[]," *id.* at 152, much less how the company "perform[s] a job that, in

the absence of a contract with a private firm, the Government itself would have had to perform,"

*id.* at 154.  As a result, nothing in the removal notice suggests that Enbridge "acted under" a

federal officer within the meaning of Section 1442(a)1).[5]

---

[5] As for Enbridge's citations to *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 251–52 (4th Cir.
2017), and *Ripley v. Foster Wheeler*, LLC, 841 F.3d 207, 209 (4th Cir. 2016), those cases are
wholly distinguishable because they involved government contractors providing goods or
services to the federal government.  Here, by contrast, Enbridge identifies no contractual
relationship with PHMSA.  Instead, the company merely operated the Straits Pipelines as a
regulated private firm—conduct that cannot give rise to federal officer jurisdiction.  *See Watson*,

Enbridge also fails the second prong of federal officer jurisdiction because it cannot show a "causal connection between the charged conduct and the asserted official authority." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir. 2010) (cleaned up). To meet this burden, Enbridge "must show that it is being sued because of the acts it performed at the direction of the federal officer." *Id.* Enbridge does not—and cannot—claim that it was directed by PHMSA to violate the 1953 Easement. Nor can Enbridge's violations of the public trust doctrine (which stem from the *location* of the pipelines on public trust terrain) be traced back to PHMSA (which has no authority to "prescribe the location of routing a pipeline facility"). 49 U.S.C. § 60104(e).

## IV. This matter is not within the Court's admiralty jurisdiction.

Finally, Enbridge's invocation of admiralty jurisdiction rests on a misunderstanding of both the State's Complaint and the governing law. In determining whether admiralty jurisdiction applies, courts distinguish between tort and contract cases, using different tests for each. *See The Belfast*, 74 U.S. 624, 637 (1868); *see also Alleman v. Omni Energy Servs. Corp.*, 580 F.3d 280, 285 (5th Cir. 2009) (noting that these tests "have long been different"). To invoke admiralty jurisdiction over a tort claim, a party must show that (1) either "the tort occurred on navigable water" or the "injury suffered on land was caused by a vessel on navigable water," (2) "the incident has a potentially disruptive impact on maritime commerce," and (3) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (cleaned up). By contrast, admiralty jurisdiction over a contract claim "depends upon the nature and character of the contract, and the true criterion is whether it has reference to

---

551 U.S. at 153–54 (drawing a line between "a private contractor" and "a company [that] is subjected to intense regulation").

maritime service or maritime transactions."  *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004)

(cleaned up); *see also New Hampshire Ins. Co. v. Home Sav. & Loan Co. of Youngstown, Ohio*,

581 F.3d 420, 424 (6th Cir. 2009).

Here, Enbridge tries to recast this action as one sounding in tort, citing the State's

concerns that a ship's anchor might strike the pipelines and release oil into the Straits of

Mackinac.  (Amended Notice of Removal, at 11, ¶ 26, ECF No. 12, PageID.247).  But this is not

a case alleging that Enbridge is liable in tort on the basis of any such concerns.  It is a contract

and property rights dispute over the State's revocation and termination of an easement based on

Enbridge's violations of both the public trust doctrine and the terms and conditions of the

easement.  (Compl. at 18–19, ¶¶ A-E, ECF No. 1-1, PageID.36–37).  Thus, all of the relevant

rights and remedies at issue in this action derive from public trust and contract law, not tort law.

For that reason, Enbridge cannot base federal jurisdiction on the Admiralty Extension Act

("AEA"), which only applies to maritime tort claims.  46 U.S.C. § 30101(a) (expanding

admiralty jurisdiction to certain "cases of injury or damage . . . caused by a vessel on navigable

waters"); *Jerome B. Grubart*, 513 U.S. at 531–32 (explaining how the AEA changed "[t]he

traditional test for admiralty tort jurisdiction").  Likewise, its citation to *Jerome B. Grubart* is

wholly inapposite, as Enbridge itself acknowledges that this case dealt solely with "tort liability."

(Amended Notice of Removal, at 11, ¶ 25, ECF No. 12, PageID.247).

Applying the correct jurisdictional test, this Court can easily conclude that the State's

claims fall outside the scope of maritime contract law.  The case law is clear that the

construction, maintenance, and operation of underwater oil pipelines are not maritime activities.

In considering whether an employment contract was maritime in nature for the purposes of

determining whether a worker's compensation claim should be litigated in federal court or state

court, the Supreme Court held that a welder who built and maintained underwater oil pipelines which serviced offshore oil rigs was not employed in a maritime activity because, "There is nothing inherently maritime about those tasks.  They are also performed on land, and their nature is not significantly altered by the marine environment . . . ."  *Herb's Welding v. Gray*, 470 US 414, 424–425 (1985).  *See also Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1046–1050 (5th Cir. 1990) (installing an oil and gas pipeline known as a "gathering line" on the seabed is not a maritime activity).

The 1953 Easement Agreement between the State and Enbridge does not require the use of a vessel, nor is it related to vessels at all.  Rather, it is a contract for the placement of oil pipelines on the lakebed.  (Compl. Ex 1, ECF No. 1-1, PageID.38–51.)  It is, therefore, not maritime in nature, and not within the Court's admiralty jurisdiction.

## CONCLUSION AND RELIEF REQUESTED

Enbridge has not met and cannot meet its burden of establishing federal jurisdiction in this case.  Each of its asserted grounds for jurisdiction, including substantial federal question jurisdiction, federal common law, federal officer removal under 28 U.S.C. § 1442(a)(1), and federal admiralty jurisdiction, is without merit.  Accordingly, this Court should promptly remand this case to the Ingham County Circuit Court pursuant to 28 U.S.C. §1447(c).

Respectfully submitted,

Dana Nessel
Attorney General

/s/ *Robert P. Reichel*
Robert P. Reichel (P31878)
Daniel P. Bock (P71246)
Assistant Attorneys General
Attorneys for Plaintiffs

Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
reichelb@michigan.gov
bockd@michigan.gov

Dated:  March 16, 2021

LF:  Enbridge Straits (Dec & Inj Relief)(GOV)(DNR)WD/AG# 2020-0304222-B-L/Brief – in Support of Motion to Remand 2021-03-16