UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| THE STATE OF MICHIGAN, GOVERNOR OF THE STATE OF MICHIGAN, and MICHIGAN DEPARTMENT OF NATURAL RESOURCES, | No. 1:20-cv-01142-JTN-RSK |
| Plaintiff, | |
| v. | HON. JANET T. NEFF |
| ENBRIDGE ENERGY, LIMITED PARTNERSHIP; ENBRIDGE ENERGY COMPANY, INC.; and ENBRIDGE ENERGY PARTNERS, L.P., | |
| Defendants. | |

---

*AMICUS CURIAE* BRIEF OF THE GREAT LAKES BUSINESS NETWORK AND
ENVIRONMENTAL ORGANIZATIONS IN SUPPORT OF
PLAINTIFF'S MOTION TO REMAND

Margrethe Kearney (P80402)
Environmental Law & Policy Center
116 Somerset Dr. NE
Grand Rapids, MI 49503
T: (773) 726-8701
F: (312) 795-3730
mkearney@elpc.org

Dated: March 30, 2021

## TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................. 1

**INTERESTS OF AMICI ORGANIZATIONS** ........................................................................ 2

**ARGUMENT** ........................................................................................................................... 4

    I.    THIS COURT SHOULD REMAND THE STATE'S LAWSUIT BECAUSE THE STATE COURT IS THE PROPER FORUM FOR QUESTIONS OF STATE LAW CLAIMS BASED ON THE EXERCISE OF STATE SOVEREIGN AUTHORITY UNDER THE PUBLIC TRUST DOCTRINE. ................................................. 4

    II.   REMOVAL OF THE STATE'S LAWSUIT WOULD UNDERMINE THE ROLE OF STATE COURTS IN DEVELOPING AND PROTECTING THE PUBLIC TRUST PRINCIPLES ENSHRINED IN MICHIGAN'S CONSTITUTION AND INCORPORATED INTO THE STATE'S PRIMARY ENVIRONMENTAL PROTECTION STATUTE, THE MICHIGAN ENVIRONMENTAL PROTECTION ACT. ................................................. 7

    III.  REMOVAL OF THE STATE'S COMPLAINT IMPERMISSIBLY ASSUMES COMPLETE PREEMPTION OF STATE PUBLIC TRUST LAW AND IGNORES COOPERATIVE FEDERALISM. ................................. 9

**CONCLUSION** ..................................................................................................................... 13

## INTRODUCTION

Amici the Great Lakes Business Network and Great Lakes Environmental Organizations,[1] have a shared interest in ensuring that Michigan's state courts remain the forum for litigation of the purely state claims that Enbridge improperly seeks to remove to federal court. Amici support Plaintiffs State of Michigan, Governor Gretchen Whitmer, and the Michigan Department of Natural Resources' (collectively, the State) request that this Court remand the complaint to the state court because it raises only state law issues, all of which are underpinned by state public trust law.[2] *PPL Montana v. Montana*, 565 U.S. 576, 590-91 (2012). On November 13, 2020, the State issued a Notice of Revocation and Termination of the Lakehead (now Enbridge) 1953 Easement for the Line 5 dual pipelines in the Straits of Mackinac. The Notice addresses urgent threats to public trust resources and seeks enforcement of the terms of the State's contractual agreements with Enbridge. The state court complaint is based solely on this exercise of the State's property and public trust authority to protect Michigan's natural resources and the people and businesses that depend on them.

Amici address the erroneous contention in Enbridge's Original Notice that the State's complaint "raises disputed and substantial federal questions that a federal forum may entertain without disturbing a congressionally approved balance of responsibilities between the federal and state judiciaries." Notice of Removal at ¶ 7-8, ECF No. 1, PageID.4-13. To the contrary, removal

---

[1] The Great Lakes Environmental Organizations consist of the Environmental Law & Policy Center ("ELPC"), Michigan Climate Action Network ("MiCAN"), For Love of Water ("FLOW"), Great Lakes Law and Policy Center, National Wildlife Federation ("NWF"), and Straits of Mackinac Alliance, ("SMA").  A brief statement of interest for each of these organizations is included in the Motion for Leave to File *Instanter* the *Amicus Curiae* Brief of the Great Lakes Business Network and Environmental Organizations in Support of Plaintiff's Motion to Remand at ¶¶ 8-12.

[2] Counsel for Amici certify that this brief was not written in whole or in part by counsel for any party, and that no person or entity other than Amici, their members, and their counsel has contributed financially to the submission of this brief.

1

of this matter would improperly divest state courts of jurisdiction over the State's public trust obligations and authority with respect to the Straits of Mackinac. In addition, Enbridge's Amended Notice of Removal incorrectly argues that the State's complaint implicates a "uniquely federal interest" in "claims of environmental protection from interstate and international sources." Amended Notice of Removal at ¶ 6, ECF No. 12, PageID.239. The State's complaint does not implicate federal environmental regulation, which is based on principles of cooperative federalism and clearly defines those areas of environmental law – such as state public trust authority – that remain with states. Contrary to Enbridge's assertions, removal of the State's complaint to federal court would disturb the careful and intentional balance between state and federal governments under environmental laws.

## INTERESTS OF AMICI ORGANIZATIONS

The Amici are a coalition of business leaders and enterprises and non-profit environmental organizations that have a shared interest in ensuring that public trust questions are addressed by Michigan's state courts.

The business leaders and enterprises making up the Great Lakes Business Network depend for their very existence on the Great Lakes and other Michigan waterways being healthy and clean. The Great Lakes Business Network first convened in January 2017 at the inspiration of Larry Bell, the President and CEO of Bell's Brewery, which was threatened by Enbridge's Line 6b oil spill. Over 17 hours, more than one million gallons of oil spilled from Enbridge's pipeline into the Kalamazoo River watershed, resulting in one of the largest inland oil spills in United States history and causing over $1 billion of damages.[3] The founding businesses included Bell's Brewery, Lake

---

[3] Enbridge Energy Partners, L.P. for the quarterly period ended September 30, 2014, Form 10-Q at 19. http://media.mlive.com/grpress/news_impact/other/Enbridge%20FORM%2010-Q.pdf (last accessed at September 30, 2014).

2

Charlevoix Brewing Company, Patagonia, Bar Fly, Cherry Republic, Grand Rapids Brewing Co., Hop Cat, Sleeping Bear Surf & Kayak, Shepler's Ferry, and Beth Price Photography.  Since 2017, the Great Lakes Business Network's membership has grown to include more than 170 separate business entities, ranging from sole proprietorships to employers of hundreds of state residents.[4] The industries represented generate significant revenue and employment for Michigan, and are heavily reliant on branding and marketing consistent with the "Pure Michigan" image of the Great Lakes State.  For example, the brewery industry alone is a nearly $1 billion per year industry for Michigan that employed 9,738 workers in 2016.[5]  The Network members are unified in building a coalition to advance natural resource policies that support Michigan businesses and to protect the health and vitality of the Great Lakes and the economy, businesses and communities that depend on them.

The environmental organizations and their members, along with other Michigan citizens, are the legal beneficiaries of the public trust in Michigan's public lands and waters. The environmental organizations' supporters and members enjoy and use the public trust waters of the Great Lakes and engage in advocacy to protect, preserve, enhance, and restore the natural resources of the Straits of Mackinac and other waters in the Great Lakes region. The environmental organizations look to federal and state law to advance their resource protection goals, and recognize state public trust law as an essential and distinct component in protection of Michigan's natural resources. They routinely engage in activities designed to enhance and clarify Michigan's public trust doctrine and seek to protect the resources held in public trust by the state. Through this

---

[4] Great Lakes Business Network, https://glbusinessnetwork.com/partners/ (last visited March 27, 2021).
[5] Miller, Steven R.; Sirrine, J. R.; McFarland, Ashley; Howard, Philip H.; Malone, Trey. 2019. Craft Beer as a Means of Economic Development: An Economic Impact Analysis of the Michigan Value Chain, Beverages 5, no. 2: 35. https://doi.org/10.3390/beverages5020035

engagement, they have become keenly aware of the importance of state courts in developing the rich and robust qualities of Michigan's public trust law.

Amici represent a variety of interests, but all share a common desire to ensure that interpretation of the public trust doctrine, which governs the lands and waters that are vital to each of those various interests, is interpreted and enforced by state courts. Recognizing the narrow question of remand before the Court, Amici do not seek to present argument or information regarding the impact of a Line 5 shut down – or oil spill – on the environment or the economy. Amici recognize that state court is the proper forum for considering the legal and factual questions relevant to the State's complaint, which are broader than the narrow question of how one particular state might be economically impacted. Rather, Amici's argument is that, to the extent these factors are relevant to the State's complaint, state courts are the proper venue for that evidentiary determination, and are charged with interpreting the public trust doctrine in light of those factors.

## ARGUMENT

**I. This Court Should Remand the State's Lawsuit Because the State Court Is the Proper Forum for Questions of State Law Claims Based on the Exercise of State Sovereign Authority Under the Public Trust Doctrine.**

Removal of the State's lawsuit would contravene and undermine the state court's primary role in determining the scope, nature, and extent of the State's sovereign authority over the State's public trust resources. Upon statehood in 1837, Michigan became vested with title "absolutely" in the bottomlands and navigable waters of the state. *PPL Montana*, 565 U.S. at 590-91; *Shively v. Bowlby*, 152 U.S. 1 (1894). The United States Supreme Court distinguished the public trust doctrine from the equal-footing doctrine under which federal law determines riverbed title, and affirmed that "the States retain residual power to determine the scope of the public trust over waters within their borders." *PPL Montana,* 565 U.S. at 603–04. Michigan law has long recognized that its waters are protected "by a high, solemn and perpetual trust, which it is the duty of the state to

4

forever maintain." *Collins v Gerhardt*, 211 N.W. 115, 118 (Mich. 1926). The contours of the State's solemn obligation are properly determined by Michigan courts, especially where the State has asserted those obligations independently of any federal law.

The U.S. Supreme Court has recognized the exclusive power and jurisdiction of the states and their state courts to determine questions involving the public trust doctrine. *E.g., PPL Montana,* 565 U.S. at 603-604. The states, including Michigan, "hold the absolute right to all their navigable waters, and the soils under them" subject only to rights surrendered and powers granted by the Constitution to the federal government. *Martin v. Waddell's Lessee,* 41 U.S. 367, 410 (1842); *PPL Montana,* 565 U.S. at 590-591. In *PPL Montana*, the Court stated unequivocally: "the public trust doctrine remains a matter of state law, subject as well to the federal power to regulate vessels and navigation under the Commerce Clause and admiralty power." *Id.,* at 604. And while the Federal Government holds "power to regulate vessels and navigation under the Commerce Clause," the state's public trust claims fall squarely within the area of conferred state sovereign title and public trust law, and do not fall under those constitutionally limited areas. *PPL Montana*, 565 U.S. at 590-591.

State court is the only appropriate forum for the State's complaint because the underlying state claims involve the exercise of State authority over State property and State-owned bottomlands under which it granted Defendant Enbridge an easement in 1953. Enbridge voluntarily chose to obtain an easement for dual oil pipelines in the Straits of Mackinac after the State enacted a statute authorizing the Conservation Commission to grant it. Any easement granted by the Department of Conservation (now DNR) is explicitly subject to the State's public trust law in those bottomlands and waters.  *See* Mich. Comp. Laws §§ 324.2129 and 324.32502. "The State can no more abdicate its trust over property in which the whole people are interested . . . than it

can abdicate its police powers in the administration of government and the preservation of the peace." *Illinois Cent. R. Co. v. Illinois*, 146 U.S. 387, 453 (1892). The State, as sovereign, "has an *obligation* to protect and preserve the waters of the Great Lakes and *the lands beneath them* for the public" and to preserve these "as the trustee of public rights in the Great Lakes for fishing, hunting, and boating for commerce or pleasure." *Glass v. Goeckel*, 703 N.W.2d 58, 64-65 (Mich. 2005) (emphasis added). The State "cannot relinquish this obligation or duty to preserve public rights in the Great Lakes and their natural resources." *Id*. at 65; *Obrecht v. Nat'l Gypsum Co*, 105 N.W.2d 143, 149–150 (Mich. 1960) (citing and adopting the principles of *Illinois Central*).[6] When a state abdicates its "high, solemn and perpetual" duty, *Collins v. Gerhardt*, 211 N.W. 115, 118 (Mich. 1926), its action is void or revocable. *Illinois Central*, 146 U.S. at 455.

The subject matter of the State's complaint is fundamentally a question of state public trust law and must be decided by state courts. The State does not assert any claim under federal law, and asserts only its sovereign state title over the bottomlands of the Straits of Mackinac.  The contours of the State's public trust obligations are exclusively a matter of state law.  The rights asserted by the State in its complaint are so fundamental that the title and attendant public trust interest are a condition of statehood and constitutionally delegated to states. *PPL Montana*, 565 U.S. at 591. The State received the exclusive authority over its sovereign public trust right and duty to protect the waters and bottomlands and their paramount public uses for navigation, fishing, sustenance, swimming, and recreation. *State v. Venice of America Land Co*., 125 N.W. 770, 778-79 (Mich. 1910) ("The state holds the title in trust for the people, for the purposes of navigation,

---

[6] *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 285 (1997) ("An attempted transfer was beyond the authority of the legislature since it amounted to abdication of its obligation to regulate, improve, and secure submerged lands for the benefit of every individual.") (citing *Illinois Central*, 146 U.S. at 455–60).

fishing, etc. It holds the title in its sovereign capacity."). It is improper to now require the state to litigate those essential matters of state authority in federal court.

II.     **Removal of the State's Lawsuit Would Undermine the Role of State Courts in Developing and Protecting the Public Trust Principles Enshrined in Michigan's Constitution and Incorporated into the State's Primary Environmental Protection Statute, the Michigan Environmental Protection Act.**

Michigan courts are the appropriate forum for adjudicating public trust law. The State's public trust obligations are inextricably intertwined with state law providing a cause of action for violations of the public trust. Article 4, section 52 of the Constitution of the State of Michigan provides: "The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction." To fulfill this constitutional mandate, Michigan enacted the Michigan Environmental Protection Act of 1970 ("MEPA"). MCL 324.1701 *et seq*.; *Highway Comm'n v Vanderkloot*, 220 N.W.2d 416, 430 (Mich. 1974); *Ray v. Mason County Drain Comm'r*, 224 N.W.2d 883, 887 (Mich. 1975). Similar to public trust law, MEPA imposes an affirmative legal duty on State agencies and officials to prevent likely environmental degradation, *Ray*, 224 N.W.2d at 888, and creates a cause of action in any person or entity against any other person or entity "for the protection of the air, water and other natural resources *and the public trust* in those resources from pollution, impairment or destruction." Mich. Comp. Laws § 324.1701 (emphasis added). Jurisdiction and venue are vested in state circuit courts. *Id*.

Here, the State's complaint articulates three causes of action based upon and requiring adjudication of state public trust obligations. The complaint does not assert any argument or specify any federal statute or claim essential to causes of action in the complaint. When

7

determining whether a district court has federal question jurisdiction, the jurisdictional inquiry "depends entirely upon the allegations in the complaint" and asks only whether the claim as stated in the complaint "arises under the Constitution or laws of the United States." *Carlson v. Principal Fin. Group*, 320 F.3d 301, 306 (2d Cir. 2003); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The fact that Enbridge raised a preemption defense does not justify removal. As the Supreme Court has made clear, removal can only be based on a theory advanced by the plaintiff. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809, n. 6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."); *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 480 (1915) ("[T]he plaintiff is absolute master of what jurisdiction he will appeal to").

The Sixth Circuit upheld the right of plaintiffs to protect the public trust through MEPA in state court, and soundly rejected efforts by defendants to remove those cases to federal court, in a lawsuit filed in state court against the City of Detroit alleging MEPA violations. *Her Majesty the Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 334 (6th Cir. 1989). The defendant City of Detroit removed the lawsuit to federal court in the Eastern District of Michigan, and the district court denied plaintiff's motion to remand on the basis that the complaints were "artfully pled" in a purposeful attempt to deprive the federal court of jurisdiction, and on the grounds that the issues raised were actually federal matters. The Sixth Circuit disagreed, vacating the district court opinion and concluding that the complaints were improvidently removed from state court. *Detroit Audubon Soc'y. v. City of Detroit*, 696 F. Supp. 249, 252 (E.D. Mich. 1988), vacated sub nom. *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 334 (6th Cir. 1989).

8

The Sixth Circuit correctly recognized that "the Michigan legislature has clearly left to the state courts the task of giving substance to MEPA by developing a state common law of environmental quality." *Her Majesty*, 874 F.2d at 338 (citing *West Michigan Envtl. Action Council v. Natural Resources Comm'n,* 275 N.W.2d 538, 542 (Mich. 1979)). MEPA is the statutory corollary to the public trust common law in Michigan, creating an opportunity for those segments of society most affected by environmental laws – members of the public such as the Environmental Organizations and Great Lakes Business Network – to bring a claim in state circuit court for violations of the public trust. This statutory mechanism for enforcement of the State's public trust obligations is "a state environmental common law that is unaffected by federal law, and creates an independent state action that is unaffected by anything that happens in the federal sphere of government." *Her Majesty*, 874 F.2d at 341. The Sixth Circuit has recognized that the role of state courts in developing Michigan MEPA common law, and as a result interpreting the breadth and depth of the public trust doctrine, is essential to achieving the environmental protection goals that the legislature intended and that Amici rely upon in conducting their business and advocating for smart, effective environmental regulation. If federal courts defer to a state's development of environmental common law under state constitutional and statutory frameworks, it follows that they would defer to state courts with respect to the exercise of a state's sovereign authority over resources held in the public trust.

### III.  Removal of the State's Complaint Impermissibly Assumes Complete Preemption of State Public Trust Law and Ignores Cooperative Federalism.

Enbridge argues that the State complaint raises claims of environmental protection that invoke federal common law or uniquely federal interests. That argument misunderstands and misapplies principles of federal environmental law. Amended Notice of Removal at ¶ 6, ECF No.

9

12, PageID.239. Contrary to Enbridge's claim, removal of the purely state law claims disturbs the balance of cooperative federalism in federal law and rests upon an incorrect assumption that federal statutes have completely preempted or displaced the paramount title and interest of the State under the equal footing and the public trust doctrines. Federal environmental law employs concepts of cooperative federalism to set floors for environmental compliance while permitting state laws to apply in manners that do not conflict with and are no less stringent than federal law. "A critical feature of cooperative federalism statutes is the balance they strike between complete federal preemption (a preemptive federalism) and uncoordinated federal and state action in distinct regulatory spheres (a dual federalism)." Philip J. Weiser, *Federal Common Law, Cooperative Federalism, and the Enforcement of the Telecom Act*, 76 N.Y.U. L. Rev. 1692, 1697 (2001).[7]

The federal Superfund law, or CERCLA, illustrates the essential balance between federal and state law. While federal district courts have "exclusive original jurisdiction" of CERCLA actions, the statute has savings clauses similar to those found in other federal environmental statutes, such as the Clean Air and Clean Water Acts. *See* 42 U.S.C. § 7416 (preserving the right of states to adopt more stringent protections than those in the Clean Air Act); 33 U.S.C. § 1365(e) (allowing state law actions against water pollution notwithstanding the existence of federal law and standards under the Clean Water Act). These savings clauses, interpreted in the context of the spirit of cooperative federalism, have resulted in federal courts consistently finding that individuals may proceed with state law claims in state courts even while federal environmental law applies to

---

[7] Even the federal Atomic Energy Act – known for its pervasive and extensive regulation of radioactive materials – doesn't completely preempt the field and is not grounds for removing state claims. For example, in *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190 (1983), the United States Supreme Court held that a state statute regulating economic aspects of nuclear plants was not preempted by the Atomic Energy Act.

some aspects of the situation. For example, in *384 Bridge St. LLC v. RK & G Assocs. LLC*, No. 09 CV 1704 (ILG), 2009 WL 4745663, at *5 (E.D.N.Y. Dec. 7, 2009), the court concluded that any ambiguity in a lease regarding payment for cleanup of toxic chemicals should be resolved by a state court judge and warranted no federal court intervention. The district court distinguished *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), because no interpretation of a federal statute was required to adjudicate the plaintiff's claim, which was "based entirely on its rights under the Lease." In *Grable*, the question of whether a federal agency had properly followed federal law was necessary to the plaintiff's claims. *Grable*, 545 U.S. at 315. Furthermore, the federal legal question in *Grable* was both disputed and substantial, and unlike the careful balancing between state and federal interests in environmental law, there was no threat to the balance of federal and state responsibilities. *Grable*, 545 U.S. at 314. As the State points out in its Motion for Remand, Congress "has left an even larger measure of state control" in the context of oil pipelines, and removing this case to federal court would therefore result in an even stronger subversion of the balance between state and federal environmental laws.

Recent decisions related to state climate litigation demonstrate that federal courts will not tolerate efforts to delay proceedings through meritless attempts to remove state law issues to federal courts. The district court decision in *Mayor & City Council of Baltimore v. BP ("Baltimore")*, considered and rejected a "laundry list" of grounds for removal asserted by fossil fuel companies seeking to remove eight state law causes of action including nuisance, design defect, failure to warn, trespass, and violation of the Maryland Consumer Protection Act. *Baltimore*, 388 F. Supp. 3d 538, 550 (D. Md. 2019), *aff'd*, 952 F. 3d 452 (4th Cir. 2020), *cert.*

11

*granted*, 141 S. Ct. 222 (2020).[8]  The district court concluded that "[a]uthorizing removal on the basis of a preemption defense hijacks this [well-pleaded complaint] rule and, in turn, enhances federal judicial power at the expense of plaintiffs and state courts." *Baltimore*, 388 F. Supp. 3d at 558.  The court accordingly rejected "defendants' attempt to inject a federal issue into the City's state law public nuisance claim where one simply does not exist." *Id*. at 561.

In *County of San Mateo v. Chevron Corp.,* the district court and the Ninth Circuit likewise rejected fossil fuel companies' efforts to remove state law claims using the same playbook of arguments Enbridge relies on here – federal common law, preemption by federal statutes, federal officer removal and *Grable* jurisdiction.  *Cnty. of San Mateo v. Chevron Corp*., 294 F. Supp. 3d 934, 938 (N.D. Cal. 2018), aff'd in part, appeal dismissed in part, 960 F.3d 586 (9th Cir. 2020).[9] *County of San Mateo* explicitly acknowledged and rejected the argument made by Enbridge here that if state laws "inherently implicate national and international interests," Amended Notice of Removal at ¶ 22, ECF No. 12, PageID.246, then such claims must be heard in federal court:

> As the defendants note, these state law claims raise national and perhaps global questions. It may even be that these local actions are federally preempted. But to justify removal from state court to federal court, a defendant must be able to show that the case being removed fits within one of a small handful of small boxes. Because these lawsuits do not fit within any of those boxes, they were properly filed in state court and improperly removed to federal court.

294 F. Supp. 3d at 939.  In another case where fossil fuel companies sought to remove state law claims brought by the City of Oakland, the Ninth Circuit rejected efforts to characterize state public nuisance claims as meriting removal under *Grable*, and found that state law claims were

---

[8] The Fourth Circuit concluded that it only had jurisdiction to consider the district court decision regarding federal officer removal. *Baltimore*, 952 F. Supp. 3d at 461. The United States Supreme Court granted *certiorari* to consider the scope of appellate review of remand orders, and the Court heard oral argument in January 2021.

[9] The Ninth Circuit concluded that only federal officer removal could be heard on appeal. *Cnty. of San Mateo*, 960 F.3d at 598.

12

not completely preempted by federal environmental laws. *City of Oakland v. BP PLC*, 969 F.3d 895, 906–07 (9th Cir. 2020). ("Rather than identify a legal issue, the Energy Companies suggest that the Cities' state-law claim implicates a variety of 'federal interests,' including energy policy, national security, and foreign policy. The question of whether the Energy Companies can be held liable for public nuisance based on production and promotion of the use of fossil fuels and be required to spend billions of dollars on abatement is no doubt an important policy question, but it does not raise a substantial question of federal law for the purpose of determining whether there is jurisdiction under § 1331.")

Enbridge's arguments suffer from the same defects identified by the Ninth Circuit in *City of Oakland*: "Rather than identify a legal issue, the Energy Companies suggest that the Cities' state-law claim implicates a variety of 'federal interests,' including energy policy, national security, and foreign policy." *Id*. This "suggestion" is insufficient to justify removal of properly pled state law claims in state court.

## CONCLUSION

Amici support the State's request to remand its complaint to state court. The complaint raises claims based solely on state public trust law that are properly decided by state courts. Moreover, Enbridge's efforts to insert federal issues into the State's complaint cannot justify removal, in the context of the State's paramount concern for the water, environment, and public trust protected by MEPA, that would serve only to delay determination of important and imminent legal issues surrounding the validity of the 1953 Easement in State-owned bottomlands.

Dated: March 30, 2021

                            Respectfully submitted,

                            /s/ Margrethe Kearney

                            Margrethe Kearney
                            Environmental Law & Policy Center
                            116 Somerset Dr. NE
                            Grand Rapids, MI 49503
                            T: (773) 726-8701
                            F: (312) 795-3730
                            mkearney@elpc.org

                            *Attorney for Amici Curiae Environmental Law & Policy Center and Michigan Climate Action Network*

| | |
|---|---|
| James M. Olson (P18485)<br>153 ½ East Front Street Suite 203C<br>Traverse City, MI 49686<br>(231) 944-1568<br>olson@envlaw.com<br><br>*Attorney for Amicus Curiae*<br>*For Love of Water* | Bruce Wallace (P24148)<br>Hooper Hathaway Price Beuche & Wallace<br>126 S. Main Street<br>Ann Arbor, MI 48104<br>(734) 662-4426<br>bwallace@hooperhathaway.com<br><br>*Attorney for Amicus Curiae*<br>*Great Lakes Business Network* |
| Oday Salim (P80897)<br>National Wildlife Federation<br>213 W. Liberty St. #200<br>Ann Arbor, MI 48104<br>(734) 769-3351<br>salimo@nwf.org<br><br>*Attorney for Amicus Curiae*<br>*National Wildlife Federation* | Ross Hammersley (P70106)<br>Olson, Bzdok & Howard, P.C.<br>420 East Front Street<br>Traverse City, MI 49686<br>(231) 946-0044<br>ross@envlaw.com<br><br>*Attorney for Amicus Curiae*<br>*Straits of Mackinac Alliance* |