# EXHIBIT A

STATE OF MICHIGAN
IN THE 30TH JUDICIAL CIRCUIT FOR INGHAM COUNTY

DANA NESSEL, ATTORNEY GENERAL
OF THE STATE OF MICHIGAN, ON BEHALF
OF THE PEOPLE OF THE STATE OF
MICHIGAN,

    Plaintiff,

v

ENBRIDGE ENERGY, LIMITED
PARTNERSHIP; ENBRIDGE ENERGY
COMPANY INC.; and ENBRIDGE ENERGY
PARTNERS, L.P.,

    Defendants.

**TEMPORARY RESTRAINING ORDER**

CASE NO. 19-474-CE

HON. JAMES S. JAMO

At a session of said Court
held in the city of Lansing, county of Ingham,
this ___25TH___ day of June, 2020.

PRESENT: HON. JAMES S. JAMO, Circuit Court Judge

This matter comes before the Court on Plaintiff's Ex Parte Motion for a Temporary Restraining Order Pending Hearing on Motion for Preliminary Injunction, arising out of Defendants' disclosure on June 18, 2020, to various State of Michigan entities of damage to the Line 5 pipelines. Having reviewed the Motion for a Temporary Restraining Order (TRO) and Brief in Support with the Affidavit of Daniel Eichinger, Director of the Michigan Department of Natural Resources, as well as Plaintiff's Motion for Preliminary Injunction and Brief in Support with Exhibits A and B and the subsequently filed Exhibits D and E, as well as Defendants' Response in Opposition to Plaintiff's Motion for a Temporary Restraining Order, this Court finds:

1. This is an ex parte motion for a temporary restraining order; however, notice was given and received by Defendants, as evidenced by Plaintiff's counsel's e-mail confirmation and by Defendants' counsel's e-mail correspondence and response filed and reviewed June 23, 2020. Therefore the Court reviews this motion pursuant to MCR 3.310(C), rather than the requirements of MCR 3.310(B)(1) and (2).

2. Defendants have agreed to not restart the East Line until after a hearing can be held on Plaintiff's request for a preliminary injunction. Therefore, a temporary restraining order is GRANTED prohibiting Defendants from restarting the operation of the East Line pending hearing and further related Court Order.

3. As to the West Line, Defendants have argued that their engineering reports show no damage and no risk to operation of the West Line, and that the federal regulator Pipeline and Hazardous Materials Safety Administration (PHMSA) stated "no objection" to restarting the West Line and suggested restarting the line in daylight and monitoring the restart, which Enbridge did with several patrol boats presumably so that a spill or leakage happening some several hundred feet below the surface could be visibly spotted. Assuming *arguendo* that federal pre-emption does govern the field of safety regulation, as Defendants have asserted in this litigation, Defendants have failed to document the involvement of the federal regulator in any way beneficial to this Court's review of the Plaintiff's request for a restraining order. Defendants provide no documentation from PHMSA regarding what information was communicated to PHMSA or what was communicated from PHMSA to Defendants.

4. Furthermore, assuming *arguendo* that the 1953 Easement and the Second Agreement of 2018 govern the current operation of the pipelines, as Defendants have asserted in

this litigation, Defendants have effectively agreed to provide the State of Michigan certain oversight which Defendants have failed to follow regarding the June 18, 2020 event(s) resulting in Enbridge's emergency shutdown of the East and West Lines. Through the 1953 Easement, Defendants guaranteed that operation of the Line 5 pipelines "shall follow the usual necessary and proper procedures for the type of operation involved, and at all times shall exercise the due care of a reasonably prudent person for the safety and welfare of all persons and of all public and private property." Defendants provide a single internal report[1] regarding the potential damage and risk of operating the West Line, but with limited information as to how conclusions were drawn, and a promise to provide more information to the State of Michigan entities. The report detailed a remote operated vehicle (ROV) and diver visual inspection examination of the West Line, but as to any engineering or materials testing, Defendants rely exclusively on inspections made in 2017 and 2018/2019, at which time the "feature of interest" identified by the ROV and diver visual inspection had not yet appeared. No information was given about how the report reached its conclusion that current operations are safe, what might have caused the "feature of interest" on the West Line, what steps were taken to mitigate or avoid similar damage to the West Line as has been sustained by the East Line, or what information was analyzed in determining that there was no damage to the West Line's structural integrity. The Court is therefore unable to determine that Defendants have followed the usual necessary and proper procedures in restarting the West Line, or that

---

[1] Defendant's Exhibit 1.

Defendants are operating the West Line with due care as a reasonably prudent person would.

5. Further, through the Second Agreement of 2018, Defendants have agreed to provide the State with "all requested information in Enbridge's possession concerning the operation, integrity management, leak detection, and emergency preparedness for Enbridge's Line 5 pipeline located in the State of Michigan." Defendants by their own admission failed to provide such documentation, leaving the State of Michigan or the Court unable to assess the risk to state-owned bottomlands and the Great Lakes generally, as a public resource. Contrary to Enbridge's assertion, this is not "merely a discovery motion" matter. Defendants' response to the TRO request does indicate Enbridge is working on uploading more information to a shared electronic site for the State's access.

6. Defendants' failure to provide sufficient documentation to the State of Michigan related to the nature, extent, and cause(s) of the newly-discovered damage to Line 5 and its supporting infrastructure has resulted in the State's inability to review or assess any risk of harm arising from the identified damage to the West Line and from Defendants' continued use of the West Line. Since the risk of harm to the Great Lakes and various communities and businesses that rely on the Great Lakes would be not only substantial but also in some respects irreparable, this Court GRANTS a temporary restraining order against the Defendants' continued operation of the West Line until a hearing on the State's request for preliminary injunction and further related Court Order.

7. Even if this Court were considering the Motion under MCR 3.310(B)(1)(a), the Court still finds that Plaintiff has and will suffer an immediate and irreparable injury from Defendants' failure to comply with the terms of the 1953 Easement and the Second Agreement, by depriving Plaintiff of certain oversight and documentation due to it by the contractual language. Plaintiff retains a duty to protect public trust lands, and it is currently unable to do so as a result of Defendants' failures. Furthermore, the severe risk of harm that may result from Defendants' operation of the West Line if wrong in its conclusion that it can safely do so in spite of recent damage to Line 5 of unknown origin is so substantial and irreparable, and endangers so many communities and livelihoods and the natural resources of Michigan, the danger far exceeds the risk of financial loss to Defendants if the west pipe of Line 5 is shut down pending hearing and further related Court Order.

8. The East Line may not be restarted by Defendants until a determination is made on the Motion for a Preliminary Injunction.

9. The West Line operations must cease as immediately as possible upon receipt of this Order, but within no more than 24 hours. The West Line may not be restarted by Defendants until a determination is made on the Motion for a Preliminary Injunction.

10. The Veteran's Memorial Courthouse as well as the Ingham County Clerk's Office is currently closed on Fridays due to employee furloughs related to the COVID-19 pandemic. Therefore, Defendants must SERVE a written response to the Motion for a Preliminary Injunction upon Plaintiff via email, with email copy to the Court's Law Clerk, no later than 1:00 p.m. on Friday, June 26, 2020. Defendants must then FILE

the written response with the Ingham County Clerk's Office no later than 9:00 a.m. on Monday, June 29, 2020.

11. Plaintiff may FILE and SERVE a Reply Brief no later than 1:00 p.m. on Monday, June 29, 2020, with email service upon Defendants and email copy to the Court's Law Clerk.

12. This Court will hear oral arguments on the Motion for Preliminary Injunction via Zoom video conference hearing on Tuesday, June 30, 2020, at 1:30 p.m. The hearing will be livestreamed concurrently on YouTube at Judge Jamo's Channel, accessible at www.youtube.com/c/HonJudgeJamesSJamoVirtualCourtroom.

**IT IS SO ORDERED.**

_____
Hon. James S. Jamo
Circuit Court Judge

## PROOF OF SERVICE

I hereby certify that I emailed a copy of the above ORDER upon each attorney of record on June 25, 2020.

*Kacie Smith*

Kacie Smith (P78903)
Law Clerk to the Hon. James S. Jamo