# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE STATE OF MICHIGAN,
GOVERNOR OF THE STATE OF
MICHIGAN, and MICHIGAN
DEPARTMENT OF NATURAL
RESOURCES,

      Plaintiffs,

v.

ENBRIDGE ENERGY, LIMITED
PARTNERSHIP; ENBRIDGE ENERGY
COMPANY, INC.; and ENBRIDGE
ENERGY PARTNERS, L.P.,

      Defendants.

Case No. 1:20-cv-01142-JTN-RSK

Hon. Janet Neff

Magistrate Judge Ray Kent

***CHAMBERS AMICI CURIAE
BRIEF IN SUPPORT OF
DEFENDANTS***

RIVENOAK LAW GROUP, P.C.
Attorneys for the Canadian Chamber of
Commerce, the Chamber of Commerce of
the United States of America, the Michigan
Chamber of Commerce, the Ohio Chamber
of Commerce, and the Wisconsin
Manufacturers & Commerce, Inc.
Valerie J.M. Brader (P66401)
Catherine T. Dobrowitsky (P63245)
3331 W. Big Beaver Rd., Suite 109
Troy, MI 48084
(248) 677-1045
ECF@rivenoaklaw.com

## AMICI CURIAE BRIEF OF THE CHAMBERS
## IN OPPOSITION OF THE MOTION TO REMAND

## <u>TABLE OF CONTENTS</u>

I.     Introduction and Interest of the Amici Curiae…………………...…... 1

II.    The Petroleum Market Is Inherently Interstate and International ……… 2

III.   Interstate Energy Emergencies Result from Intrastate
       Pipeline Shutdowns …………………………………………………….. 6

IV.    A Shutdown of the Michigan Line 5 Segment Has International
       Implications ……………………………………………………….. 8

V.     The State's Order Potentially Jeopardizes the Tunnel Project ………....10

CONCLUSION ……………………………………………………… 12

i

# TABLE OF AUTHORITIES

## Case

*Gunn v. Minton*, 568 U.S. 251 (2013) ………………………………………………..2

## State Executive Orders

Mich. Exec. Order No. 2016-10 (May 24, 2016) ………………………………… 7

Tenn. Exec. Order No. 56 (Sept. 16, 2016) ……………………………………… 8

Wis. Exec. Order No. 197 (May 6, 2016) …………………………………..…….6, 7

Wis. Exec. Order No. 268 (December 28, 2017) ………………………………… 4

## Governmental Reports Cited as Authority

DYNAMIC RISK ASSESSMENT SYSTEMS, INC. FOR THE STATE OF MICH.,
ALTERNATIVES ANALYSIS FOR THE STRAITS PIPELINES, FINAL REPORT (2017) ...… 5

U.S. DEP'T OF ENERGY, ENERGY INFORMATION ADMINISTRATION, MIDWEST (PADD
2) REFINERY UTILIZATION AND CAPACITY; and MIDWEST (PADD 2) CRUDE OIL
IMPORTS (April 30, 2021 release date) ……………………………………… 2, 3

RUTH HORTON, NATIONAL ASS'N OF STATE ENERGY OFFICES, INTEGRATING
ALTERNATIVE FUEL VEHICLES INTO EMERGENCY PLANS: A TOOLKIT FOR
TENNESSEE …………………………………………………………………….…….. 8

INTEK, INC., OFF. OF ENERGY POL'Y & SYS. ANALYSIS, U.S. DEP'T OF ENERGY, U.S.
FUEL RESILIENCY: VOLUME III UNITED STATES FUELS SUPPLY INFRASTRUCTURE
VULNERABILITY AND RESILIENCE (2014) ……………………………………..... 3

INTERNAL REVENUE SERVICE NOTICE 2017-30, TEMPORARY RELIEF FOR FUEL
REMOVALS DUE TO ENERGY EMERGENCIES RESULTING FROM WEST SHORE
PIPELINE SHUTDOWN, § 2.01 (2017)……………………………………..…….…… 7

MICH. PUB. SERV. COMM'N, MICHIGAN PETROLEUM SHORTAGE
RESPONSE PLAN (2013) …………………..………………………….…………..... ..2, 3

MICH. PUB. SERV. COMM'N, MICHIGAN STATEWIDE ENERGY
ASSESSMENT (2019) ………………………………………………...….. 4, 5

PUBLIC SECTOR CONSULTANTS, PREPARED FOR MICH. DEP'T OF ENV'T, GREAT
LAKES AND ENERGY AND MICH. PUB. SERV. COMM'N, ANALYSIS OF PROPANE
SUPPLY ALTERNATIVES FOR MICHIGAN, at 16-17 (March 2020)…………………3

REPORT OF THE SPECIAL COMMITTEE ON THE ECONOMIC RELATIONSHIP BETWEEN
CANADA AND THE UNITED STATES; PUBLISHED UNDER THE AUTHORITY OF THE
SPEAKER OF THE CANADIAN HOUSE OF COMMONS, ENBRIDGE'S LINE 5: AN INTERIM
REPORT; RELATIONSHIP BETWEEN CANADA AND THE UNITED STATES, (Apr. 2021;
43rd Parliament, 2nd Session) ………………………………………...….. 9, 10, 11

THIRD AGREEMENT BETWEEN THE STATE OF MICHIGAN ET AL. AND ENBRIDGE
ENERGY, L.P. ET AL. (Dec. 18, 2018) ………………………………………..10

TUNNEL AGREEMENT (Dec. 18, 2018) ……………………………………… 10, 11

U.S. DEP'T OF TRANSP., FEDERAL MOTOR CARRIER AND SAFETY ADMIN.,
EXTENSION OF THE STATE DECLARATION NOTICE UNDER 49 C.F.R. § 390.25 (June
13, 2016) ……………………………………………………….…....….. 7, 8

U.S. DEP'T OF TRANSP., FEDERAL MOTOR CARRIER AND SAFETY ADMIN.,
EXTENSION OF THE STATE DECLARATION NOTICE UNDER 49 C.F.R. § 390.25 (July
12, 2016) ...………………………………………...……...……...…7, 8

U.S. GOVERNMENT ACCOUNTABILITY OFFICE, OIL AND GAS TRANSP., DEPARTMENT
OF TRANSPORTATION IS TAKING ACTIONS TO ADDRESS RAIL SAFETY, BUT
ADDITIONAL ACTIONS ARE NEEDED TO IMPROVE PIPELINE SAFETY, GAO-14-667
(August 2014) ……………………………………………….………… 5, 6

WARREN WILCZEWSKI, U.S. ENERGY INFORMATION ADMIN. PRESENTATION TO
UPPER PENINSULA ENERGY TASK FORCE, PROPANE MARKET FUNDAMENTALS (Nov.
13, 2019) ……………………...…………………….…………………………...4
.

## I.      Introduction and Interest of the Amici Curiae

The Canadian Chamber of Commerce, the Chamber of Commerce of the United States of America, the Michigan Chamber of Commerce, the Ohio Chamber of Commerce, and the Wisconsin Manufacturers and Commerce, Inc. (collectively, the "Chambers") respectfully submit this amici curiae brief in opposition to the State's motion to remand and in accordance with this Court's February 18, 2021 order (ECF No. 20).[1]

At issue here is the potential shutdown of a segment of an interstate, cross-border petroleum pipeline—known as Line 5.  The pipeline runs, in part, from Canada through Wisconsin and into Michigan where it crosses the Straits of Mackinac.  Shutting down the pipeline carries tremendous consequences for the Chambers, their members, and, as a result, the national economies.  The Chambers

---

[1] Rivenoak Law Group, P.C. authored the brief in whole and did not make a monetary contribution intended to fund the preparation or submission of the brief.  No monetary contributions intended to fund the preparation or submission of the brief were made by a person other than the amici curiae.   Rivenoak Law Group, P.C. certifies this brief is in compliance with the length limits of this Court's order of February 18, 2021 and otherwise in compliance with the local rules of the Western District of Michigan.

represent business interests all throughout the United States and Canada, more than 15,000 of whom are located in the states of Michigan, Ohio, and Wisconsin.   The proposed shutdown of Line 5 at the Straits of Mackinac would have a substantial negative impact to their member businesses, their employees, and residents of Canada and the United States, including those of Michigan, Ohio, and Wisconsin. It would also endanger a key public-private partnership designed to enhance protections for the Great Lakes.

The Chambers offer the below discussion of the likely severe, nationwide, and international impacts of such a shutdown to show that this case presents an issue of great importance "to the federal system as a whole" and thus belongs in federal court.  *See Gunn v. Minton*, 568 U.S. 251, 260 (2013).

## II.    The Petroleum Market Is Inherently Interstate and International

According to the U.S. Department of Energy's Energy Information Agency ("EIA"), approximately two-thirds of the crude oil refined in the U.S. Midwest was imported from Canada in 2019.[2]  Over the last decade, the Midwest region imports

---

[2] The EIA reports that in 2019, 2,524 barrels per day were imported into the Midwest (PADD 2) from Canada in 2019, out of 3,820 barrels per day (66%). *Compare* MIDWEST (PADD 2) REFINERY UTILIZATION AND CAPACITY, available at http://www.eia.gov/dnav/pet/pet_move_impcp_a2_r20_epc0_ip0_mbblpd_a.htm

2

of propane have increased by 63% and it now supplies propane supplies to the southern and eastern United States.  PUBLIC SECTOR CONSULTANTS, PREPARED FOR MICH. DEP'T OF ENV'T, GREAT LAKES AND ENERGY AND MICH. PUB. SERV. COMM'N, ANALYSIS OF PROPANE SUPPLY ALTERNATIVES FOR MICHIGAN, at 16-17 (March 2020) (excerpt attached as Exhibit A).  The Department of Energy additionally identifies supply loss to refineries in the Midwest as a vulnerability or threat to energy supplies to many states, including Michigan, Ohio, and Wisconsin. INTEK, INC., OFF. OF ENERGY POL'Y & SYS. ANALYSIS, U.S. DEP'T OF ENERGY, U.S. FUEL RESILIENCY: VOLUME III UNITED STATES FUELS SUPPLY INFRASTRUCTURE VULNERABILITY AND RESILIENCE AT 27 (2014) (excerpt attached as Exhibit B).

For example, Michigan has only one oil refinery located within its boundaries, and that facility supplies approximately 18% of the petroleum products needed; the majority of the refined petroleum products used in Michigan are produced at refineries elsewhere, including in Ohio.  MICH. PUB. SERV. COMM'N, MICH. PETROLEUM SHORTAGE RESPONSE PLAN, at 3 (2013) (excerpt attached as Exhibit C).

---

and MIDWEST (PADD 2) CRUDE OIL IMPORTS found at https://www.eia.gov/dnav/pet/pet_pnp_unc_dcu_r20_a.htm (April 30, 2021 release date).

Michigan itself recognizes the interstate and international nature of the propane market.  Michigan uses more propane than any state in the country and depends heavily not just on in-state propane production facilities (at least one of which is dependent on Line 5), but also the Sarnia, Ontario fractionator (which is also fed by Line 5).  MICH. PUB. SERV. COMM'N, MICHIGAN STATEWIDE ENERGY ASSESSMENT, at 22, 130-31 (2019) (excerpt attached as Exhibit D). Michigan receives propane by truck and rail from locations in Canada, Ohio, Illinois, and Indiana.  *Id.* at 131; *see also* WARREN WILCZEWSKI, U.S. ENERGY INFORMATION ADMIN. PRESENTATION TO UPPER PENINSULA ENERGY TASK FORCE, PROPANE MARKET FUNDAMENTALS, slide 15 (Nov. 13, 2019) (excerpt attached as Exhibit E).  And when supply is especially tight—such as during the polar vortex of 2014—it is trucked into upper Midwest states from Kansas or even the Gulf Coast. MICHIGAN STATEWIDE ENERGY ASSESSMENT at 22, 134 (2019).

Similarly, Wisconsin, whose residents consume the third most propane of any state in the country, sources fuel not only from terminals in Wisconsin (many of which are fed from interstate pipelines), but also from terminals in Michigan, Minnesota, and Illinois.  Wis. Exec. Order No. 268 at 1 (December 28, 2017) (Exhibit F). When supplies were especially tight (the polar vortex of 2014), some supplies for upper Midwest states were trucked in from Kansas or even the Gulf

Coast. MICH. STATEWIDE ENERGY ASSESSMENT, at 22, 134 (2019) (excerpt

attached as Exhibit D).

Given the interconnection of the market, Michigan's decision to halt the

Line 5 Straits segment will have interstate effects.  Indeed, the State's own analysis

of alternatives to Line 5 predicts so, finding that a partial retirement of Line 5 in

the Straits would increase operating costs at the Rapid River processing facility

(which also serves Wisconsin), rendering it uneconomic.  DYNAMIC RISK

ASSESSMENT SYSTEMS, INC. FOR THE STATE OF MICH., ALTERNATIVES ANALYSIS

FOR THE STRAITS PIPELINES, FINAL REPORT, at 4-6 (2017) (excerpt attached as

Exhibit G).  The loss of the Rapid River facility will further increase prices in

Wisconsin because not only would Wisconsin lose a facility on which it depends,

but Michigan's Public Service Commission also predicts that Michigan's demand

would shift "out of state to locations like Superior or Janesville, WI."  MICH.

STATEWIDE ENERGY ASSESSMENT, at 134 (excerpt attached as Exhibit D).  The

Dynamic Risk Assessment Systems report notes that trucking of petroleum

products from other locations would likely replace the Rapid River facility.

DYNAMIC RISK ASSESSMENT SYSTEMS, INC. FOR THE STATE OF MICH. at 4-6 (2017).

Insufficient pipeline capacity to transport petroleum products poses

"environmental risks" and "safety risks" including increased air pollution that

contributes to haze and more road accidents that result in fatalities.  U.S.

GOVERNMENT ACCOUNTABILITY OFFICE, OIL AND GAS TRANSP., at 1 and 18-19 (August 2014) (excerpt attached as Exhibit H).  The increase in pollution from trucking and in traffic fatalities will occur not just in Michigan, but in neighboring states including Ohio and Wisconsin.

The businesses of Michigan, Ohio, and Wisconsin – as well as their employees and indeed businesses all over the United States and Canada – depend on the interstate and international energy economy to function smoothly.  When one portion of the system experiences a shutdown, it has an immediate price impact on other parts of the system.

### III.    Interstate Energy Emergencies Result from Intrastate Pipeline Shutdowns

The potential implications for energy supply constraints are significant and extend beyond increases in prices, air pollution and traffic fatalities.  Temporary and permanent pipeline outages have caused several interstate energy emergencies in recent years.  The examples below of such incidents strongly demonstrate the interstate (and international) nature of the energy systems and economies on which the Chambers' members and residents of both Canada and the U.S. depend.

In March of 2016, the West Shore Pipeline, which carried petroleum products between Milwaukee and Green Bay, Wisconsin, had to be shut down.  The West Bay shutdown resulted in an energy emergency in Wisconsin and beyond. Wis. Exec. Order No. 197 (May 6, 2016) (Exhibit I).   The emergency

resulted because the pipeline shutdown was expected to trigger widespread terminal outages in the Green Bay area, extending wait times at Milwaukee and Madison terminals and leading to the trucking of products over long distances. *Id.* at 1. Despite the ability to transport fuel via tank trucks and/or rail cars to avoid material fuel shortages and supply fuel to the northern portion of Wisconsin, the U.S. federal government recognized the situation as an energy emergency. *See, e.g.,* INTERNAL REVENUE SERVICE NOTICE 2017-30, TEMPORARY RELIEF FOR FUEL REMOVALS DUE TO ENERGY EMERGENCIES RESULTING FROM WEST SHORE PIPELINE SHUTDOWN, § 2.01 (2017) (Exhibit J).

Despite being an *intra*state pipeline shutdown, both the U.S. federal government and other state governments recognized that the West Bay shutdown caused emergency conditions within and beyond Wisconsin's borders. For example, the energy emergency spread to Michigan as well, because the Green Bay terminals fed by the West Shore Pipeline in turn shipped those products on tanker trucks to fueling stations in the Upper Peninsula of Michigan. Mich. Exec. Order No. 2016-10, at 1 (May 24, 2016) (Exhibit K). A lack of supply led to longer driving distances, wait times, and working hours for gasoline and other motor fuels transporters, causing drivers to reach maximum weekly driving and off-duty limits with fewer trips. *Id.* The shutdown of the pipeline in Wisconsin continued to seriously disrupt delivery throughout the State of Michigan, most notably the

7

Upper Peninsula Region and Cheboygan County, even months later.  *See* U.S.
DEP'T OF TRANSP., FEDERAL MOTOR CARRIER AND SAFETY ADMIN., EXTENSION OF
THE STATE DECLARATION NOTICE UNDER 49 C.F.R. § 390.25, at 1 (June 13, 2016)
(Exhibit L); U.S. DEP'T OF TRANSP., FEDERAL MOTOR CARRIER AND SAFETY
ADMIN., EXTENSION OF THE STATE DECLARATION NOTICE UNDER 49 C.F.R. §
390.25, at 1 (July 12, 2016) (Exhibit M).

    This was not an isolated example of problem with an intra-state pipeline
problem causing interstate energy emergencies.  In September 2016, Colonial
Pipeline shut down a portion of its gasoline pipeline in Alabama for 12 days. In the
interim, energy emergencies were declared in Alabama, Georgia, North Carolina,
and Tennessee.  *See* Tenn. Exec. Order No. 56, at 1 (Sept. 16, 2016) (Exhibit N).
In that short span of time, gas supplies tightened throughout Tennessee and the
Nashville area experienced a "run on the pumps," with sales increasing 50 percent
above normal.  RUTH HORTON, NATIONAL ASS'N OF STATE ENERGY OFFICES,
INTEGRATING ALTERNATIVE FUEL VEHICLES INTO EMERGENCY PLANS: A TOOLKIT
FOR TENNESSEE, p. 8 (excerpt attached as Exhibit O).

## IV.    A Shutdown of the Michigan Line 5 Segment Has International
##         Implications

    As noted above, not only are the petroleum systems in the American
Midwest inherently interstate, but they are also international.  Key facilities in the
United States receive petroleum products from and deliver petroleum products to

Canada, and vice-versa.  Many of those connections are made in the State of Michigan.

Line 5 provides just such a connection. "Enbridge Inc.'s (Enbridge's) Line 5 pipeline (Line 5) has been in use since 1953, and transports up to 540,000 barrels of light crude oil and natural gas liquids per day. These petroleum products are refined into propane, gasoline, jet fuel and other products at refineries and factories in Ontario and Quebec, as well as in Indiana, Michigan, Ohio and Pennsylvania." REPORT OF THE SPECIAL COMMITTEE ON THE ECONOMIC RELATIONSHIP BETWEEN CANADA AND THE UNITED STATES; PUBLISHED UNDER THE AUTHORITY OF THE SPEAKER OF THE HOUSE OF COMMONS, ENBRIDGE'S LINE 5: AN INTERIM REPORT; RELATIONSHIP BETWEEN CANADA AND THE UNITED STATES, at 3 (Apr. 2021; 43rd Parliament, 2nd Session) (excerpt attached as Exhibit P).

Echoing the concerns regarding energy emergencies that have arisen in the U.S. following the shutdowns of petroleum pipelines, the Canadian House of Commons went on to note: "the possible shutdown of Line 5 has raised concerns in Canada about the security of energy supplies, job losses and other negative effects. Line 5 contributes to the Canada–U.S. economic relationship, creates opportunities for cross-border trade in energy products, and helps to ensure that consumers in both countries can access these products reliably." *Id.*

The report from the Canadian House of Commons further notes the energy security risks to Canada as a result of the shutdown and details concerns with the diplomatic implications of the shutdown, noting the long working relationship on infrastructure issues, some of which are enshrined in formal agreements (e.g. the Transit Pipelines Treaty of 1977). *Id.* at 11.

### V.     The State's Order Potentially Jeopardizes the Tunnel Project

Under the agreements Michigan has entered into with the Defendants here, Defendants are obligated to construct -- at their own cost -- a tunnel in the Straits bedrock to house a new pipeline.  The tunnel solution essentially eliminates the risk of an oil spill at the Straits of Mackinac.  Defendants are subject to substantial penalties for avoidable delays under these agreements.

Under the termination clause of two agreements (both the Third Agreement and the Tunnel Agreement), if Defendants comply with the State of Michigan order and involuntarily shut down the pipeline, then Defendants can choose to terminate their obligations to construct such a tunnel. THIRD AGREEMENT BETWEEN THE STATE OF MICHIGAN ET AL. AND ENBRIDGE ENERGY, L.P. ET AL. (Dec. 18, 2018), Section 10.3(a) ("Enbridge may terminate this Agreement…if… Enbridge has involuntarily ceased operation of the existing Line 5 Dual Pipelines… at the direction of a Governmental Entity at any point during the design or construction of the Tunnel.") (excerpt attached as Exhibit Q); TUNNEL AGREEMENT (Dec. 18,

2018), Section 17.3 ("Enbridge may terminate this Agreement…if… Enbridge has involuntarily ceased operation of the existing Line 5 Dual Pipelines… at the direction of a Governmental Entity at any point during the design or construction of the Tunnel.") (excerpt attached as Exhibit R). If Defendants do not follow such an order, such that there is no involuntary cessation of operation of Line 5, then termination of the tunnel project would not be permitted under these clauses.

Should Enbridge comply with Michigan's directive to shut down the pipeline segment, the future is much more unclear.  For instance, if this case were to conclude with a determination that the Defendants are *not* in violation of the 1953 easement at issue here, then the Company could conceivably choose to continue to operate the current pipelines and cease construction of the tunnel.

The Chambers support the Straits tunnel as a solution that serves both the economy and the environment of the Great Lakes.  Termination of the tunnel project would be a resoundingly negative outcome.  It would perpetuate a state of affairs that the State (and the amici who support the State's action) all find unacceptable. The Chambers join with many others, including the Canadian House of Commons, in urging Michigan and Defendants to make sincere efforts to resolve this dispute.  See REPORT OF THE SPECIAL COMMITTEE, at 11.  The Chambers also urge the parties not to create avoidable short-term crises or put at risk the long-term solution (the tunnel) that they agree is superior to the status quo.

11

## **CONCLUSION**

The Chambers expect that if the segment of Line 5 is shut down as proposed, the interstate and international effects will be substantial.  Their members will face at best, significant strains on their businesses due to inflated energy prices, and will almost certainly face energy emergencies for propane, gasoline, jet fuel, and other products on which they depend and that flow and are processed across state lines and the international boundary with Canada. The Chambers also urge all parties to work earnestly to find a solution that avoids these outcomes and protects the tunnel project.

Respectfully submitted,

RIVENOAK LAW GROUP, P.C.

By: /s/Valerie J.M. Brader
3331 W. Big Beaver Rd., Suite 109
Troy, MI 48084
(248) 677-1045
ECF@rivenoaklaw.com
P66401

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---

THE STATE OF MICHIGAN,
GOVERNOR OF THE STATE OF
MICHIGAN, and MICHIGAN
DEPARTMENT OF NATURAL
RESOURCES,

       Plaintiffs,

v.

ENBRIDGE ENERGY, LIMITED
PARTNERSHIP; ENBRIDGE ENERGY
COMPANY, INC.; and ENBRIDGE
ENERGY PARTNERS, L.P.,

       Defendants.

Case No. 1:20-cv-01142-JTN-RSK

Hon. Janet Neff

Magistrate Judge Ray Kent

***PROOF OF SERVICE OF
CHAMBERS' AMICI CURIAE
BRIEF IN SUPPORT OF
DEFENDANTS***

---

RIVENOAK LAW GROUP, P.C.
Valerie J.M. Brader (P66401)
Catherine T. Dobrowitsky (P63245)
3331 W. Big Beaver Rd., Suite 109
Troy, MI 48084
(248) 677-1045
ECF@rivenoaklaw.com
*Attorneys for the Canadian Chamber of
Commerce, the Chamber of Commerce of
the United States of America, the Michigan
Chamber of Commerce, the Ohio Chamber
of Commerce, and the Wisconsin
Manufacturers & Commerce, Inc.*

---

## PROOF OF SERVICE

On May 11, 2021, I caused to be sent via email to the parties listed below a copy of the Amicus Curiae Brief of the Canadian Chamber of Commerce, the Chamber of Commerce of the United States of America, the Michigan Chamber of Commerce, the Ohio Chamber of Commerce, and the Wisconsin Manufacturers & Commerce, Inc. (the "Chambers") in Support of Defendants. The parties have agreed to accept service by e-mail and that service via first-class mail is not necessary here. I certify that these statements are true to the best of my information, knowledge and belief.

On June 1, 2021, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which sends an electronic notification to all parties of record via the ECF System.

June 1, 2021

Respectfully submitted,

/s/Valerie J. M. Brader
RIVENOAK LAW GROUP, P.C.
Attorneys for Amici Curiae, the Chambers
3331 W. Big Beaver Rd., Ste. 109
Troy, MI  48084
(248) 677-1045
ECF@rivenoaklaw.com
P66401

2

Robert P. Reichel (P31878)
Daniel P. Bock (P71246)
Assistant Attorneys General
Attorneys for Plaintiffs
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
reichelb@michigan.gov
bockd@michigan.gov

Phillip J. DeRosier (P55595)
Dickinson Wright PLLC
Attorney for Defendants
500 Woodward Avenue
Suite 4000
Detroit, MI 48226
(313) 223-3866
pderosier@dickinsonwright.com

David H. Coburn
William T. Hassler
Alice Loughran
Joshua Runyan
Steptoe & Johnson LLP
Attorneys for Defendants
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000
dcoburn@steptoe.com
whassler@steptoe.com
aloughran@steptoe.com
jrunyan@steptoe.com

Peter H. Ellsworth (P23657)
Jeffery V. Stuckey (P34648)
Dickinson Wright PLLC
Attorneys for Defendants
123 W. Allegan St., Ste 900
Lansing, MI 48933
(517) 371-1730
pellsworth@dickinsonwright.com
jstuckey@dickinsonwright.com

John J. Bursch (P57679)
Attorney for Defendants
Bursch Law PLLC
9339 Cherry Valley Ave., SE, #78
Caledonia, MI 49316
(616) 450-4235
jbursch@burschlaw.com

Matthew D. Harper
Eastman & Smith Ltd.
Attorney for Amicus
One SeaGate, 24th Fl.
P.O. Box 10032
Toledo, OH 43699
mdharper@eastmansmith.com

Leigh Currie
Minnesota Office of the Attorney
General Attorney for Amicus
445 Minnesota St., Ste. 1400
Saint Paul, MN 55101
(651) 757-1291
leigh.currie@ag.state.mn.us

3

Christopher Robert Clark
Earthjustice (IL)
Attorney for Amicus
311 S. Wacker Dr., Ste. 1400
 Chicago, IL 60606
(773) 841-8981
cclark@earthjustice.org

Margrethe K. Kearney
Environmental Law and Policy
Center
Attorney for Amicus
116 Somerset Dr. NE
Grand Rapids, MI 49503
(231) 795-3730
mkearney@elpc.org

Gordon D. Giffin
Government of Canada
Attorney for Amicus
Dentons US LLP
1900 K Street NW, Ste. 100 Washington
D.C. 20006 (404) 527-4020
gordon.giffin@dentons.com

4