# Exhibit Q

**THIRD AGREEMENT BETWEEN THE STATE OF MICHIGAN, MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY, AND MICHIGAN DEPARTMENT OF NATURAL RESOURCES AND ENBRIDGE ENERGY, LIMITED PARTNERSHIP, ENBRIDGE ENERGY COMPANY, INC., AND ENBRIDGE ENERGY PARTNERS, L.P.**

This Third Agreement is entered between the State of Michigan, the Michigan Department of Environmental Quality, and the Michigan Department of Natural Resources (collectively referred to herein as "the State"), AND Enbridge Energy, Limited Partnership, Enbridge Energy Company, Inc., formerly known as Lakehead Pipe Line Company, Inc., and Enbridge Energy Partners, L.P. (collectively referred to herein as "Enbridge") concerning those segments of Enbridge's Line 5 pipeline ("Line 5") that are located within the State of Michigan. This Third Agreement results from, and is intended to fulfill, the parties' obligations under Paragraph I.G. of the Second Agreement between the State and Enbridge, entered October 3, 2018 ("Second Agreement"), in which the parties agreed to pursue further agreements to address Line 5's crossing of the Straits of Mackinac ("Straits").

WHEREAS, the Second Agreement affirms that the segments of Line 5 located within Michigan must be operated and maintained in compliance with all applicable laws that are intended to protect the public health, safety, and welfare and prevent pollution, impairment, or destruction of the natural resources of the State of Michigan, including the unique resources of the Great Lakes, and requires specified measures to further protect ecological and natural resources held in public trust by the State of Michigan;

WHEREAS, the Second Agreement remains in effect and the parties wish to supplement it pursuant to Paragraph I.G. of that Agreement by entering into this Third Agreement addressing the operation, replacement, and decommissioning of the existing Dual Pipelines at the Straits, conditioned upon and in conjunction with, an Agreement between Enbridge and the Mackinac Straits Corridor Authority ("Authority") to design, construct, operate, and maintain a utility tunnel at the Straits to accommodate a replacement for the Dual Pipelines and other utilities ("Tunnel Agreement");

WHEREAS, on December 19, 2018, Enbridge and the Authority entered into the Tunnel Agreement.

The Parties hereby agree as follows:

1

. . .

8.3     Other Delay Events - The Parties further agree that any other circumstance included within the definition of Delay Event in Section 8.1 may on a case-by-case basis be determined by Enbridge and the State to constitute a Delay Event.

8.4     Notice - If a Delay Event occurs, Enbridge will notify the State of the Delay Event within a reasonable time after Enbridge is aware that a Delay Event has occurred. The notice will describe the Delay Event, the anticipated duration of the Delay Event, if known, and the efforts taken by Enbridge to minimize the delay and any adverse effects of the delay.

8.5     Disputes - Any dispute between the Parties relating to the existence or duration of a Delay Event will be resolved in accordance with Article 9, Dispute Resolution.

Article 9 Dispute Resolution

9.1     Except as otherwise specified in this Third Agreement, the Parties agree to the following procedures to resolve all disputes between them arising under this Third Agreement.

9.2     Informal Dispute Resolution - First, designated representatives of the Parties will engage in good faith efforts to informally resolve the dispute for a period of up to sixty (60) days, provided that the Parties may mutually agree in writing to extend that period.

9.3     Optional Mediation - If the dispute is not resolved informally though Section 9.2, the Parties may, though mutual written agreement, select a neutral mediator to facilitate the resolution of the dispute. Unless otherwise agreed, the parties will equally share the costs of the mediator's services.

9.4     Judicial Dispute Resolution - If the dispute is not resolved informally though Section 9.2, or, if applicable, through Section 9.3, either Party may submit the dispute to a court of competent jurisdiction for resolution.

Article 10 Termination

10.1     Term. This Third Agreement shall remain in effect until such time that the Dual Pipelines are decommissioned, unless terminated in accordance with 10.2 or 10.3 below.

10.2     Termination by the State. The State may terminate this Agreement if: (i) after being notified in writing by the State of any material breach of this Agreement, Enbridge fails to commence remedial action within ninety (90) days to correct the identified breach or fails to use due diligence to complete such remedial action within a reasonable time thereafter; (ii) the dispute resolution procedures of Article 9 are followed with respect to the breach; and (iii) the final judicial resolution of the dispute is in favor of the State's position that the Agreement should be terminated.

10.3 Termination by Enbridge. Enbridge may terminate this Agreement:
   (a) By written notice to the State if: (i) Enbridge has involuntarily ceased operation of the existing Line 5 Dual Pipelines as a result of a court order or at the direction of a Governmental Entity at any point during the design or construction of the Tunnel; or (ii) Enbridge has voluntarily chosen to permanently cease operations on the existing Line 5 Dual Pipelines at any point during the design or construction of the Tunnel;
   (b) If: (i) after being notified in writing by Enbridge of any material breach by the State of this Agreement, which shall include but not be limited to any unreasonable impairment by the State of Enbridge's ability to construct the Tunnel or construct, operate, and maintain the Straits Line 5 Replacement Segment within the Tunnel in accordance with the Tunnel Agreement and the Lease, the State has failed to commence remedial action within ninety (90) days to correct the identified breach or impairment or failed to use due diligence to complete such remedial action within a reasonable time thereafter; (ii) the dispute resolution procedures of Article 9 are followed with respect to the breach; and (iii) the final judicial resolution of the dispute is in favor of Enbridge's position that the Agreement should be terminated.

10.4 Survival.

The assurances provided in Section 4.2 above shall survive in the event of termination of this Third Agreement, under Sections 10.3(b) and (c).

Article 11 Amendment

This Third Agreement may be amended only through written agreement executed by authorized representatives of both Parties.

Article 12 Notices

12.1 Unless otherwise agreed to by the Parties, all notices, submissions, or communications required under this Agreement must be in writing and served either by personal service, by prepaid overnight courier service or by certified or registered mail to the address of the receiving Party set forth below (or such different address as may be designated by such Party in a notice to the other Party, from time to time). Notices, consents, and requests served by personal service shall be deemed served when delivered. Notices, consents, and requests sent by prepaid overnight courier service shall be deemed served on the day received, if received during the recipient's normal business hours, or at the beginning of the recipient's next business day after receipt if not received during the recipient's normal business hours. Notices, consents, and requests sent by certified or registered mail, return receipt requested, shall be deemed served ten (10) business days after mailing.

. . .