# Exhibit R

# Tunnel Agreement

Parties: Mackinac Straits Corridor Authority ("Authority") and Enbridge Energy, Limited Partnership ("Enbridge") (collectively "Parties").

Recitals/Preamble:

A. On October 3, 2018, the State of Michigan, the Michigan Department of Environmental Quality, and the Michigan Department of Natural Resources entered into an agreement ("Second Agreement") that contemplates that Enbridge will enter into further agreements with the Authority to construct an underground tunnel ("Tunnel") connecting the Upper and Lower Peninsulas to accommodate a replacement of that portion of Enbridge's Line 5 pipeline ("Line 5") that crosses the Straits of Mackinac ("Straits") and to provide the potential to accommodate use by other Utilities (as defined below).

B. In accordance with the Second Agreement, and as provided in this Agreement, Enbridge desires to construct and the Authority desires to receive a Tunnel in which a replacement to the Line 5 Dual Pipelines could be constructed, operated, and maintained ("Straits Line 5 Replacement Segment") so as to allow for the discontinuation of service on the existing Line 5 Dual Pipelines' crossing of the Straits upon the Straits Line 5 Replacement Segment being placed into service within the underground Tunnel, and to allow for the possibility of other utilities to be moved from their current locations at the Straits and into the Tunnel.

C. The Parties agree that: (1) Enbridge will, at its expense, design, construct, operate and maintain the Tunnel; (2) Enbridge and the Authority will jointly obtain all Governmental Approvals and Permits required for the Tunnel; and (3) the Authority will (a) obtain certain rights in public property needed for construction and operation of the Tunnel, (b) authorize Enbridge to enter, use, and occupy such public property to construct the Tunnel and the Straits Line 5 Replacement Segment; (c) accept ownership of the Tunnel after it is constructed in accordance with agreed upon Technical Specifications; and (d) issue a lease to Enbridge authorizing it to operate and maintain the "Straits Line 5 Replacement Segment" within the Tunnel ("Straits Tunnel Lease").

Article 1 Definitions and Interpretation

1.1. Definitions
    (a) "Additional Tunnel Right of Way" means the lands on the north and south sides of the Straits that are necessary for the construction, operation, inspections and maintenance of the Tunnel and the Straits Line 5 Replacement Segment.
    (b) "Agreement" means this agreement including all schedules.
    (c) "Applicable Law" means any federal State or local statute, law, code, regulation, ordinance, rule, common law, judgment, judicial or administrative order, decree,

1

. . .

15.5 <u>Assistance in Securing Continuity</u>

    15.5.1 Enbridge shall, before the Lease Expiration Date, do all things reasonably required by the Authority to ensure the smooth and orderly transfer of responsibility for the Tunnel to the Authority or its nominee, including:

        (a) Meet with the Authority and such other persons notified by the Authority to discuss the Tunnel;

        (b) Provide full access to its operations for the purpose of familiarization;

        (c) Provide accurate and comprehensive information to Authority and its nominee to determine the status and condition of the Tunnel and any construction programs in place at the time;

        (d) Perform any other activities specified in the Project Handback Condition Report.

<u>Article 16 Dispute/Issue Resolution</u>

16.1 Except as otherwise specified in this Lease, the Parties agree to the following procedures to resolve all disputes between them with respect to or arising under this Lease.

16.2 Informal Dispute Resolution- Designated representatives of the Parties will engage in good faith efforts to informally resolve the dispute for a period of up to sixty (60) days, provided that the Parties may mutually agree in writing to extend that period.

16.3 Optional Mediation- If the dispute is not resolved informally though Article 16.2, the Parties may, though mutual written agreement, select a neutral mediator to facilitate the resolution of the dispute.

16.4 Judicial Dispute Resolution- If the dispute is not resolved informally though Section 16.2, or, if applicable, through Section 16.3, either Party may submit the dispute to a court of competent jurisdiction for resolution.

<u>Article 17 Remedies</u>

17.1 Each of the Parties acknowledges that the provisions of this Lease are essential for the protection of the legitimate interests of the other Party and are fair and reasonable in scope and content and agrees that an award of money damages would be inadequate for any breach of this Lease by the other Party or its representatives and that any such breach would cause the non-breaching Party irreparable harm. Accordingly, in addition to any other remedies that may be available at law or in equity, each of the Parties shall be entitled, without the requirement of posting a bond or other security, to equitable relief, including injunctive relief, mandamus, and specific performance and each of the Parties agrees not to oppose the granting of such relief on the basis that the non-breaching party has an adequate remedy at law. Notwithstanding anything in Article 16 to the contrary, Enbridge may seek temporary injunctive relief in a court of law with jurisdiction over the Parties to maintain the status quo or prevent irreparable harm without first following the procedures in Sections 16.2 and 16.3.

17.2 If Enbridge fails to cure a breach of Enbridge's obligations under Article 10 of this Lease within 90 days after receipt of written notice from the Authority describing such breach or, if such breach cannot reasonably be cured within such 90 days, but Enbridge commences to cure such breach within such 90 day period, within such longer period of time as will reasonably be required to cure such breach, the Authority may retain an experienced, creditworthy third-party operator to perform the requirements under Article 10 of this Lease and Enbridge will reimburse the Authority for the reasonable costs and expenses payable to such third party operator during the term of this Lease. Section 17.1 and this Section 17.2 will be the Authority's sole and exclusive remedies for any breach of Enbridge's obligations under Article 10 of this Lease.

17.3 Termination by the Authority. The Authority may terminate this Lease if: (i) after being notified in writing by the Authority of any material breach of this Lease (except for a breach of Article 10), Enbridge fails to commence remedial action within 90 days to correct the identified breach or fails to use due diligence to complete such remedial action within a reasonable time thereafter; (ii) the dispute resolution procedures of Article 16 are followed with respect to the breach; and (iii) the final judicial resolution of the dispute is in favor of the Authority's position that the Lease should be terminated.

17.4 Termination by Enbridge. Enbridge may terminate this Lease:

(a) If (i) after being notified in writing by Enbridge of any material breach by the Authority of this Lease, the Authority has failed to commence remedial action within 90 days to correct the identified breach or impairment or failed to use due diligence to complete such remedial action within a reasonable time thereafter; (ii) the dispute resolution procedures of Article 16 are followed with respect to the breach; and (iii) the final judicial resolution of the dispute is in favor of Enbridge's position that the Lease should be terminated;

(b) If the Third Agreement is rescinded, revoked, or terminated for any reason other than as provided under Section 10.2 of the Third Agreement;

(c) If: (i) after being notified in writing by Enbridge of any material breach by the State of the Third Agreement which shall include but not be limited to any unreasonable impairment by the State of Enbridge's ability to construct, operate, and maintain the Straits Line 5 Replacement Segment within the Tunnel in accordance with the Tunnel Agreement, this Lease, and the Third Agreement, the State fails to commence remedial action within 90 days to correct the identified breach or fails to use due diligence to complete such remedial action within a reasonable time thereafter; (ii) the applicable dispute resolution procedures of the Third Agreement are followed; and (iii) the final judicial resolution of the dispute is in favor of Enbridge's position;

(d) If Enbridge has involuntarily ceased operation of any portion of Line 5 as a result of a court order or at the direction of a Governmental Entity; or

(e) Enbridge has voluntarily chosen to permanently cease operations of Line 5.

17.5 Material Breach by the Authority

If after being notified in writing by the Enbridge of any material breach of this Lease, (i) the Authority fails to commence remedial action within 90 days to correct the identified breach or

14

fails to use due diligence to complete such remedial action within a reasonable time thereafter; (ii) the dispute resolution procedures of Article 16 are followed with respect to the material breach; and (iii) the final judicial resolution of the dispute is in favor of the Enbridge's position that the Authority is in material breach, then Enbridge may do any of the following at its sole discretion:

(i) Enbridge may, as part of the judicial resolution of the dispute, seek equitable relief in accordance with Section 17.1, recognizing that MCL 254.324 does not provide an opportunity for an obligation of funds as a remedy for breach, and therefore monetary damages cannot provide adequate relief under the law;

(ii) Enbridge may exercise its rights under Section 17.4; or

(iii) Enbridge may continue under this Lease without obligation to perform under Sections 9.3, 10.4, 10.7 and 10.8.

Article 18 Effect of Termination

18.1 If this Lease is terminated in accordance with Section 17.3: (i) if no other Third-Party Utility or other third-party has been authorized by the Authority to use the Tunnel at that time Enbridge will be solely responsible for all costs associated with the abandonment of the Tunnel and the decommissioning of the Straits Line 5 Replacement Segment; and (ii) Enbridge's obligation to indemnify the Authority under Article 14 will survive such termination.

18.2 If this Lease is terminated in accordance with Sections 17.3 or Section 17.4(e), Enbridge will reimburse the Authority for any reasonable costs incurred by the Authority in retaining a staff official and third parties to assist the Authority's performance under this Lease.

18.3. If this Lease is terminated in accordance with Sections 17.4(a), (b) or (c), the assignment of rights to Enbridge under the Tunnel Easement referenced in Section 3.1(b) of the Tunnel Agreement will remain effective without further action by the Parties.

Article 19 Right to Purchase

19.1 The Authority shall not sell or otherwise dispose of all or any portion of the Tunnel or Tunnel Easement if this Lease is terminated in accordance with Section 17.4 without Enbridge's written consent.

19.2 If the Authority desires to sell or otherwise dispose of all or any portion of the Tunnel or the Tunnel Easement, then, in consideration of Enbridge's commitment to operate and maintain the Tunnel, the Authority will provide Enbridge with written notice of such desire and the Authority's proposed reasonable terms and conditions of sale.

19.3 Enbridge shall have ninety (90) days after its receipt of the Authority's notice under Section 19.1 in which to notify the Authority of Enbridge's exercise of its right of purchase. If Enbridge timely exercise such right, the Parties shall draft, and the Parties shall promptly enter into, a purchase agreement on the terms and conditions provided for in Section 19.1.

. . .