UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE OF MICHIGAN, GOVERNOR OF THE
STATE OF MICHIGAN, and MICHIGAN
DEPARTMENT OF NATURAL RESOURCES,   Case No. 1:20-cv-1142-JTN-RSK

    Plaintiffs,   HON. JANET T. NEFF

v

ENBRIDGE ENERGY, LIMITED PARTNERSHIP,
ENBRIDGE ENERGY COMPANY, INC., and
ENBRIDGE ENERGY PARTNERS, L.P.,

    Defendants.
_____/

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR REMAND**

    Plaintiffs ("the State") submit this Brief in Opposition to Defendants' ("Enbridge") Motion for Leave to File Supplemental Brief (ECF No. 73). This Court properly denied (ECF No. 68) Enbridge's previous, very similar Motion for Leave to File Supplemental Brief (ECF No. 55). Once again, for the reasons briefly outlined below, the State respectfully submits that this Court should (1) deny Enbridge's present motion because its proposed supplemental brief does not provide information legally relevant to the proper disposition of the pending motion to remand, and (2) reject Enbridge's reiteration of the Canadian government's legally unfounded suggestion that all proceedings in this case, including disposition of the pending motion for remand, be held in abeyance pending further communications between Canadian and U.S. government officials regarding Line 5.

    The premise of Enbridge's motion and proposed supplemental brief is that it wishes to apprise the Court of an "important development" that purportedly "further supports this Court's

exercise of original jurisdiction." (ECF No.73, PageID.977.) But the "development" in question—the Canadian government's invocation of the dispute resolution provision of the 1977 Transit Pipeline Treaty ("1977 Treaty" or "Treaty") (ECF No. 73-1, PageID.990–991), like the prior statements referring to informal communications between Canadian and U.S. officials regarding Line 5 and its possible shutdown (ECF No. 52)—has no bearing on the jurisdictional issue here.

Neither the 1977 Treaty itself nor Canada's recent invocation of the dispute resolution process contained in Article IX of the Treaty is relevant to the sole legal issue now before this Court: whether it has jurisdiction over the State's complaint removed by Enbridge. As explained in the State's remand briefing,[1] the 1977 Treaty and foreign affairs issues invoked by Enbridge are at most ordinary defenses, not matters that could support removal under one of the two established exceptions to the well-pleaded complaint rule: the *Grable* "substantial federal question" doctrine, *see Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005), and complete preemption, *see Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987).

Nor, as Enbridge asserts (ECF No. 73-1, PageID.982–984), does Canada's request for formal negotiations with the United States under the Treaty establish that the State's complaint is removeable as a matter of federal common law. As explained in the State's opening brief (ECF No. 42, PageID.502–503) and reply brief (ECF No. 51, Page ID.847), the State's complaint does not require the application of federal common law relating to foreign affairs. Enbridge's reliance on *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997) (ECF No. 55-1,

---

[1] *See* State's opening brief (ECF No. 42, PageID.488), reply brief (ECF No. 51, PageID.840, 842) and brief in opposition to Defendants' motion for leave to file supplemental brief (ECF No. 58, PageID.882). Among other things, this prior briefing already addresses much of the authority identified by Enbridge in the instant motion, and the State will not repeat those arguments in full here.

PageID.871–872) is misplaced.  The court in *Torres* expressly recognized that a foreign government injecting itself into a case by filing an amicus brief "does not, standing alone, create a question of federal law." *Id.* at 542–543.  The *Torres* court found federal jurisdiction because the Peruvian government not only had an economic interest in the outcome of the case, but itself "participated substantially" in the activities in Peru for which the mining company defendant was being sued. *Id.*  The plaintiffs' claims thus struck "not only at vital economic interests but also at Peru's sovereign interests by seeking damages for activities and policies in which the government actively has been engaged." *Id.*  Here, by contrast, the complaint is not based upon the Canadian government's activities and policies, but rather Enbridge's operation of a portion of Line 5 on State-owned lands within Michigan.

In a case analogous to this one, where the defendants invoked foreign policy concerns to oppose remand, the Ninth Circuit rejected "the proposition that the federal courts may assert jurisdiction over a case simply because a foreign government has expressed a special interest in its outcome." *Patrickson v. Dole Food Co.*, 251 F.3d 795, 803 (9th Cir. 2001).  The court reasoned:

> [W]e see no logical connection between [any effect a pending lawsuit may have on a foreign government's sovereign interests] and the assertion of federal-question jurisdiction.  That the case is litigated in federal court, rather than state court, will not reduce the impact of the case on the foreign government.  Federal judges cannot dismiss a case because a foreign government finds it irksome, nor can they tailor their rulings to accommodate a non-party.  Federal judges, like state judges, are bound to decide cases before them according to the rule of law.  If a foreign government finds the litigation offensive, it may lodge a protest with our government; our political branches can then respond in whatever way they deem appropriate—up to and including passing legislation.  Our government may, of course, communicate its own views as to the conduct of the litigation, and the court—whether state or federal—can take those views into account.  But it is quite a different matter to suggest that courts—state or federal—will tailor their rulings to accommodate the expressed interests of a foreign nation that is not even a party.

*Id.* at 803.

Put another way, "If courts were to take the interests of the foreign government into account, they would be conducting foreign policy . . . . Because such political judgments are not within the competence of either state or federal courts, we can see no support for the proposition that federal courts are better equipped than state courts to deal with cases raising such concerns." *Id.* at 804.

Accordingly, nothing about Canada's recent decision to request negotiations with the United States renders the Treaty any more relevant to the threshold issue of removal jurisdiction presented in the motion to remand than it was when Enbridge submitted its previous unsuccessful Motion for Leave to file Supplemental Brief.

Finally, there is no legal or factual basis for Enbridge's request to hold this case in abeyance. Enbridge adopts the Canadian government's suggestion that abeyance is warranted because a ruling by this Court "could undermine, conflict or interfere with the obligations and processes established by the Treaty." (ECF No. 73-1, PageID.986.) But like Canada in its amicus brief, Enbridge wholly fails to substantiate this apparent concern, let alone explain how a ruling on the State's motion for remand might trigger it. Indeed, there is nothing to indicate that this Court's determination of jurisdiction over the lawsuit between the State and Enbridge might somehow run afoul of the Treaty between the United States and Canada. To the contrary, were this Court to simply abey this case as Canada desires, it would be unduly "tailor[ing its] rulings to accommodate the expressed interests of a foreign nation that is not even a party," *Patrickson*, 251 F.3d at 803, while effectively presuming jurisdiction and control over the case without proper regard for the state court where it was filed and belongs. *See, e.g., id.* at 804 ("Because such political judgments are not within the competence of either state or federal courts, we can see no support for the proposition that federal courts are better equipped than state courts to deal

4

with cases raising such concerns."); *see also Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990) ("Under our system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." (quotation omitted)).

It has been nearly a year since the State filed this lawsuit in Ingham County Circuit Court, to vindicate its sovereign right to control the use of State-owned Great Lakes bottomlands, to discharge its duty under the public trust doctrine to protect those lands and waters, and to enforce the terms of contractual agreements between the State and Enbridge.  Staying this case based on some speculative outcome of indeterminate international treaty negotiations would deprive the State of its ability to protect these core sovereign interests while indefinitely enshrining the status quo that Enbridge desires.  In ruling on the motion to remand, this Court would simply fulfill its responsibility to determine the threshold issue of jurisdiction.  It would not determine the merits of the State's claims or Enbridge's various defenses, including the alleged preemptive effect of the Treaty; those issues will be separately considered by whichever court is ultimately determined to have jurisdiction over the State's complaint.  And the United States and Canada, the only parties to the Treaty, will remain free to proceed in accordance with its terms.

## CONCLUSION

For the reasons set forth above, Enbridge has not shown good cause for leave to file supplemental briefing because there have been no relevant legal or factual developments. Therefore, this Court should deny Enbridge's motion for leave to file its proposed supplemental brief, reject the suggestion to hold proceedings in this case in abeyance, and grant the State's motion to remand.

5

Respectfully submitted,

Dana Nessel
Attorney General

/s/ *Robert P. Reichel*
Robert P. Reichel (P31878)
Daniel P. Bock (P71246)
Assistant Attorneys General
Attorneys for Plaintiffs
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
reichelb@michigan.gov
bockd@michigan.gov

Dated:  November 4, 2021

LF:  Enbridge Straits (Dec & Inj Relief)(GOV)(DNR)WD/AG# 2020-0304222-B-L/Pls' Brief in Opp to Defs' Motion for Leave 2021-11-04