**EXHIBIT A**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE STATE OF MICHIGAN, GOVERNOR OF
THE STATE OF MICHIGAN, and MICHIGAN
DEPARTMENT OF NATURAL RESOURCES,

    Plaintiffs,

    v.

ENBRIDGE ENERGY, LIMITED PARTNERSHIP,
ENBRIDGE ENERGY COMPANY, INC., and
ENBRIDGE ENERGY PARTNERS, L.P.,

    Defendants.

No. 1:20-cv-01142-JTN-RSK
HON. JANET T. NEFF

ON DEFENDANTS'
MOTION FOR LEAVE
TO FILE A
SUPPLEMENTAL BRIEF

## SUPPLEMENTAL BRIEF OF *AMICUS CURIAE* THE GOVERNMENT OF CANADA IN SUPPORT OF DEFENDANTS

Gordon D. Giffin
    *Counsel of Record*
Tami Lyn Azorsky
Simon A. Steel
Grace M. Dickson
**Dentons US LLP**[*]
1900 K Street NW, Ste. 100
Washington D.C. 20006
(404) 527-4020
gordon.giffin@dentons.com

*Counsel for the Government of Canada*

---

[*] Individual attorneys resident in, and licensed to practice in, various Dentons US LLP offices/jurisdictions.

The Government of Canada ("Canada") respectfully submits this brief *amicus curiae* to support Defendants' (collectively, "Enbridge") motion for leave to file Enbridge's supplemental brief (ECF#73 (filed Oct. 21, 2021)).[1] The essential premise and principal significance of Enbridge's proposed filing lies in Canada's formal invocation, on October 4, 2021, of the international dispute resolution provision — Article IX — of the 1977 *Agreement between the Government of the United States and the Government of Canada concerning Transit Pipelines*, 28 U.S.T. 7449 (1977) ("1977 Treaty"). Since Canada's action under the 1977 Treaty is central to Enbridge's motion, and since Canada's prior filings before the Court partially anticipate, but do not reflect the fact of, that action, Canada believes that it will be appropriate and helpful for Canada to address the Court on this matter. Canada offers two brief points.[2]

First, to avoid substantial repetition, Canada respectfully refers the Court to, and incorporates herein by reference, its *amicus* brief filed on June 1, 2021 (ECF#45). Canada's interests and concerns relating to a potential shutdown, and its views regarding the 1977 Treaty, remain as stated in that brief. As Canada explained, Line 5 is a transit pipeline subject to the 1977 Treaty, and an order that requires the shutting down of Line 5 would create substantial and material questions at international law regarding the United States' compliance with its obligations owed to Canada under the 1977 Treaty. Further, the 1977 Treaty is self-executing and provides, in Article IX, for its own international dispute resolution mechanism. Accordingly, "neither this Court nor any state court

---

[1] Counsel for the Government of Canada certify that this brief was not written in whole or in part by counsel for any party, and that no person or entity other than the Government of Canada and its counsel has contributed financially to the submission of this brief.

[2] Canada will not directly address Enbridge's arguments on the merits of federal jurisdiction. As an *amicus curiae*, and as a foreign sovereign, Canada believes that its proper role is to advise the Court of its interests and its views regarding the substance of the 1977 Treaty and the status of the 1977 Treaty as supreme federal law, and the need to ensure that Canada's Treaty rights are not violated by ensuring that no shutdown occurs while the Article IX process is ongoing, but not to comment more than necessary on issues of domestic US law and jurisdiction.

should act in a way that bypasses and undermines the Treaty." *Id.* at PageID.561. A judicial shutdown order while the Article IX dispute resolution process is ongoing would undermine that process and the 1977 Treaty, and parallel judicial proceedings regarding a potential shutdown order while the Article IX process is ongoing would threaten to undermine it and would potentially involve wasteful duplication of effort. Accordingly, Canada respectfully suggested, and continues to believe, that holding the present matter in abeyance for the duration of the Article IX process would be an appropriate and prudent exercise of this Court's discretion to govern the conduct of the proceedings before it. *See id.* at PageID.561-62; *see also* Enbridge Supp. Br., ECF#73-1, at PageID.986.

Second, Canada confirms that on October 4, 2021, by formal diplomatic communication to the United States, it invoked Article IX of the 1977 Treaty. Canada has now initiated the negotiation process pursuant to Article IX(1) — the first stage of the Treaty dispute resolution process. Planning for a first formal negotiating session under the Treaty is already well underway, and Canada expects that first session to happen shortly. Canada hopes that those negotiations will yield a mutually satisfactory solution as between Canada and the United States regarding the interpretation, application and operation of the 1977 Treaty. Canada will promptly inform the Court if that occurs. Should negotiations fail, Canada will promptly decide whether to proceed to the second stage of the Treaty dispute resolution process — binding international arbitration under Article IX(2) — and, again, promptly inform the Court of that development.

This is the first time in the 44-year-history of the 1977 Treaty that either Party has formally invoked its dispute resolution mechanism. Canada had hoped that the voluntary facilitative mediation process initiated by this Court's order would avert the need to initiate an international dispute resolution process. However, given the Court's "determin[ation] from the parties' filings that the formal VFM process is at least at a standstill," ECF#67, PageID.953-54 (Sept. 21, 2021),

2

Canada decided, less than two weeks thereafter, that invoking Article IX was necessary.  Canada's decision to invoke Article IX reflects the importance of this matter to Canada's energy security and economic interests and its relationship with the United States.

The Governments of Canada and the United States are now actively engaged in an international dispute resolution process that has the sole authority to determine whether the implementation of the Governor of Michigan's shutdown order would violate the binding commitments the United States made to Canada under international law in the 1977 Treaty.  As Canada stated in its *amicus* brief, ECF#45, at PageID.564, unless and until it is determined that Michigan's shutdown order is consistent with the Parties' rights and obligations established under the 1977 Treaty, this Court should take appropriate measures to ensure that a shutdown of Line 5 is not judicially compelled.

Dated November 5, 2021                                                                                   Respectfully submitted,

/s/ Gordon D. Giffin
Gordon D. Giffin
    *Counsel of Record*
Tami Lyn Azorsky
Simon A. Steel
Grace M. Dickson
**Dentons US LLP**
1900 K Street NW, Ste. 100
Washington D.C. 20006
(404) 527-4020
gordon.giffin@dentons.com

*Counsel for the Government of Canada*