UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE OF MICHIGAN, et al.,

      Plaintiffs,

      Case No. 1:20-cv-1142

v.

      HON. JANET T. NEFF

ENBRIDGE ENERGY, LIMITED
PARTNERSHIP, et al.,

      Defendants.

_____/

## OPINION AND ORDER

On November 13, 2020, the State of Michigan, Governor Gretchen Whitmer, and the Michigan Department of Natural Resources (collectively "the State Parties") filed suit in state court against Enbridge Energy, Limited Partnership; Enbridge Energy Company, Inc.; and Enbridge Energy Partners, L.P. (collectively "the Enbridge Parties").  On November 24, 2020, the Enbridge Parties removed the matter from state court to this Court.  Now pending before the Court is the State Parties' Motion to Remand (ECF No. 41), seeking to remand this matter back to state court pursuant to 28 U.S.C. § 1447(c) based on their argument that this Court lacks subject matter jurisdiction.  Having considered the submissions at bar, including the supplemental briefs for which leave was requested (ECF Nos. 73 & 76), the Court concludes that oral argument is unnecessary to resolve the issues presented.  *See* W.D. Mich. LCivR 7.2(d).  For the following reasons, the Court determines that this case is properly in federal court and therefore denies the motion to remand.

## I.    BACKGROUND

In 1953, the State of Michigan (sometimes referred to as "the State") issued the "Straits of Mackinac Pipe Line Easement Conservation Commission of the State of Michigan to Lakehead Pipe Line Company, Inc." (hereinafter "the 1953 Easement") (ECF No. 1-1 at PageID.39-51) (Compl. ¶¶ 1 & 13, ECF No. 1-1 at PageID.20 & 23).  The 1953 Easement granted the grantee and its successors and assigns the right "to construct, lay, maintain, use and operate" two 20-inch diameter pipelines for the purpose of transporting petroleum and other products "over, through, under, and upon" specifically described bottomlands owned by the State of Michigan in the Straits of Mackinac (*id.* ¶ 15, ECF No. 1-1 at PageID.23).  Construction of the pipeline was completed in 1953 (ECF No. 1 at PageID.3).  The pipeline "extends from Superior, Wisconsin, across the Upper Peninsula of Michigan, crosses the Straits of Mackinac through the Straits Pipelines portion of Line 5, and continues through the Lower Peninsula to Marysville, Michigan and then crosses beneath the St. Clair River to Sarnia, Ontario, Canada" (Compl. ¶ 10, ECF No. 1-1 at PageID.23). The Enbridge Parties are the successor in interest to Lakehead Pipe Line Company, the grantee of the 1953 Easement (Compl. ¶¶ 1, 7, ECF No. 1-1 at PageID.20, 22).

On November 13, 2020, the State of Michigan issued a Notice of Revocation and Termination of Easement ("the Notice") to revoke and terminate the 1953 Easement, effective 180 days from the date of the Notice (Compl. ¶ 1, ECF No. 1-1 at PageID.20).  That same day, the State Parties filed a Complaint against the Enbridge Parties in the State of Michigan 30th Circuit Court for the County of Ingham, alleging the following three claims as bases for declaratory and injunctive relief:

     I.    The State properly revoked the 1953 Easement because it violates the public trust.

    II.    The State properly revoked the 1953 Easement because of Enbridge's repeated and incurable violations of the Easement's terms and conditions.

2

III.   The State properly determined that the December 19, 2018 Third Agreement does not preclude the revocation and termination of the 1953 Easement.

(ECF No. 1-1).  The State Parties seek three declaratory judgments consistent with the three claims they allege as well as a permanent injunction requiring the Enbridge Parties to "cease operation of the Straits Pipelines 180 days after the date of the Notice" and "permanently decommission the Straits Pipelines in accordance with applicable law and plans approved by the State of Michigan" (*id.* at PageID.37).   According to the State Parties, the 1953 Easement may, by its terms, be terminated by the Grantor "if after receiving notice that [the Grantee] has breached its terms, the Grantee fails to cure the violation(s) within a specified period" (*id.* at ¶ 18, PageID.24).

On November 24, 2020, the Enbridge Parties removed the state court case to this Court (ECF No. 1).  That same day, the Enbridge Parties also initiated a lawsuit in this Court against the State Parties.  Referencing the federal Pipeline Safety Act, 49 U.S.C. §§ 60101 *et seq.,* and the 1977 Agreement between the Government of the United States and the Government of Canada concerning Transit Pipelines, 28 U.S.T. 7449 (1977) ("the 1977 Treaty"), the Enbridge Parties allege the following three claims as bases for declaratory and injunctive relief in their favor:

I.   Violation of the Supremacy Clause,

II.   Violation of the Interstate Commerce Clause, and

III.   Violation of the Foreign Commerce Clause and Foreign Affairs Doctrine

(ECF No. 1, Case No. 1:20-cv-1141).

On February 17, 2021, this Court conducted a Pre-Motion Conference and determined to consider its subject-matter jurisdiction and the propriety of a remand to state court before turning to consider the merits of the parties' claims or the matter of consolidating the two cases.  *See* 2/18/21 Order (ECF No. 20) (denying the Enbridge Parties' request for briefing schedules on their proposed motions to dismiss without prejudice to renewing the requests within fourteen days after

3

the Court's resolution of the motion to remand, with a joint proposed briefing schedule, if applicable).

On June 1, 2021, the State Parties filed the pending Motion to Remand (ECF No. 41).  The Enbridge Parties filed a response in opposition (ECF No. 47), and the State Parties filed a Reply (ECF No. 51).  Amicus curiae have also filed briefs in support of (ECF Nos. 43, 44 & 46) and opposing (ECF Nos. 45, 48 & 49) the motion to remand.

The formal Voluntary Facilitative Mediation process in this case is currently at a standstill. *See* 9/21/21 Order, ECF No. 67.  However, the Enbridge Parties and amicus curiae the Government of Canada recently moved this Court for leave to file supplemental briefs (ECF Nos. 73 & 76) to inform this Court that on October 4, 2021, the Government of Canada formally invoked the international dispute resolution provision of Article IX of the 1977 Treaty to determine "whether the implementation of the Governor of Michigan's shutdown order would violate the binding commitments the United States made to Canada under international law in the 1977 Treaty" (ECF No. 76-1 at PageID.1012).  The State Parties oppose the filing of the supplemental briefs (ECF Nos. 75 & 79), but the Court will, in its discretion, accept them for docketing.  *See* W.D. Mich. LCivR 7.2(c).

## II.     ANALYSIS

### A.     Motion Standard

Federal courts are courts of limited jurisdiction.  *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008).  "Unlike state trial courts, they do not have general jurisdiction to review questions of federal and state law, but only the authority to decide cases that the Constitution and Congress have empowered them to resolve."  *Id.*  Therefore, when a party opts to file a complaint in state court, federal courts must honor that choice unless Congress has authorized removal of the case.  *Id.* (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 474 (1998)).  "[S]tatutory procedures

for removal are to be strictly construed" out of respect for state sovereignty.  *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002).  The parties at bar agree that the Enbridge Parties bear the burden of demonstrating that original jurisdiction exists in this case (ECF No. 1 at PageID.4; ECF No. 42 at PageID.484).  *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006) ("The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction.").  This Court has treated the State Parties' motion to remand as a facial attack on the Court's jurisdiction, looking to the pleadings—the Complaint, the Notice of Removal, and the appropriate exhibits—for the relevant facts.  *See Mays v. City of Flint, Mich.*, 871 F.3d 437, 442 (6th Cir. 2017).

## B.      Discussion

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court of the United States . . . . where such action is pending."  28 U.S.C. § 1441(a).  Absent diversity of citizenship, 28 U.S.C. § 1441(b), which the Enbridge Parties do not allege, or the applicability of other express grounds for removal, 28 U.S.C. §§ 1442–1444, which the Court does not address, federal-question jurisdiction is required.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ohio ex rel. Skaggs,* 549 F.3d at 474 (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (en banc)).

28 U.S.C. § 1331 provides federal-question jurisdiction of all civil actions "arising under" federal law.  "A claim arises under federal law, for purposes of federal-question jurisdiction, when the cause of action is (1) created by a federal statute *or* (2) presents a substantial question of federal law."  *Miller v. Bruenger*, 949 F.3d 986, 991 (6th Cir. 2020) (emphasis added).  *Cf. Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1020 (6th Cir. 2018) (Moore, J.,

5

dissenting) ("The question of whether a federal court has subject matter jurisdiction is separate from whether there is a federal cause of action.").

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, supra.* Most often, federal-question jurisdiction attaches when federal law creates the cause of action asserted. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 383 (2016). In the other "longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction," federal-question jurisdiction lies over state-law claims that "implicate significant federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-13 (2005).

In *Grable*, the United States Supreme Court determined that federal-question jurisdiction over state-law claims will lie where the "state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. Where these requirements are met, the Supreme Court has held that "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Grable*, 545 U.S. at 313-14).

Observing that substantial-federal-question jurisdiction had been recognized "for nearly 100 years," the Supreme Court identified *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), where a suit by a shareholder claiming that the defendant corporation could not lawfully buy certain bonds of the National Government because their issuance was unconstitutional, as the "classic example." *Grable*, 545 U.S. at 312. Although Missouri law provided the cause of action,

the Supreme Court recognized federal-question jurisdiction because the principal issue in the case was the federal constitutionality of the bond issue. *Id.*

*Grable* itself was an appeal from a decision of the Court of Appeals for the Sixth Circuit. The *Grable* case arose from a 1994 seizure by the Internal Revenue Service (IRS) of real property in Michigan owned by Grable & Sons Metal Products, Inc. (Grable). 545 U.S. at 310. Grable subsequently brought a quiet title action in state court against the company to which the IRS had sold the property. *Id.* at 311. The state court action was removed to federal court as presenting a federal question. *Id.* The district court denied Grable's motion to remand the case, finding that the "claim does pose a 'significant question of federal law'" because "the claim of title depended on the interpretation of the notice statute in the federal tax law." *Id.* The district court ruled that Grable's lack of a federal right of action to enforce its claim did not bar the exercise of federal jurisdiction. *Id.* The district court also reached the merits of the question before it, granting summary judgment in favor of the purchaser. *Id.* The Sixth Circuit affirmed the district court on both the jurisdictional and merits questions.

The Supreme Court granted certiorari on the jurisdictional question alone, "to resolve a split within the Courts of Appeals on whether *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S. Ct. 3229, 92 L.Ed.2d 650 (1986), always requires a federal cause of action as a condition for exercising federal-question jurisdiction." 545 U.S. at 312. The Supreme Court framed the specific question before it as "whether want of a federal cause of action to try claims of title to land obtained at a federal tax sale precludes removal to federal court of a state action with nondiverse parties raising a disputed issue of federal title law." *Id.* at 310. The Court answered "no," ultimately affirming the Sixth Circuit's decision that the suit presented a removable federal question. The Court held that "the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal-question

jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal courts, provided or assumed by Congress." *Id.*

"Whether a case 'arises under' federal law calls for a 'common-sense accommodation of judgment to [the] kaleidoscopic situations' that present a federal question." *Estate of Cornell*, 908 F.3d at 1022 (Moore, J., dissenting) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 117 (1936)). According to the Supreme Court, the substantial-federal-question doctrine captures the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]" *Grable,* 545 U.S. at 312.  The Supreme Court has not kept federal issues out "simply because they appeared in state raiment," but neither has the Court treated "'federal issue' as a password opening federal courts to any state action embracing a point of federal law."  *Id.* at 314.  The substantial-federal-question pathway is a "slim category," *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006), which is to be "read narrowly," *Mikulski*, 501 F.3d at 568.

Whether the case at bar fits within that "slim category" is the question the Court examines. The Sixth Circuit has framed the standard as the following three-prong test: (1) "a state-law claim necessarily raise[s] a stated federal issue," (2) that is "actually disputed and substantial," (3) "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Estate of Cornell*, 908 F.3d 1014 (quoting *Grable*, 545 U.S. at 314).  Within the context of *Grable* and its Sixth Circuit progeny, the Court will analyze the parties' arguments regarding each of the three prongs in this case.

1.   *Do the State Parties' claims necessarily raise federal issues?*

Again, "[u]nder the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if

8

the vindication of a right under state law depends on the validity, construction, or effect of federal law." *Mikulski*, 501 F.3d at 565. Here, the State Parties argue that "[n]o federal issue is necessarily raised by the State's claims" (ECF No. 42 at PageID.488). The State Parties emphasize that their claims can be proved "without reference to any body of federal law" (*id.* at PageID.488-491). The State Parties opine that "[t]his case is a state-law action through and through" (ECF No. 51 at PageID.833).

In response, the Enbridge Parties argue that the scope of the property rights asserted by the State Parties necessarily turns on the interpretation of federal law that burdens those rights (ECF No. 47 at PageID.599). Specifically, the Enbridge Parties point out that the State's authority over the bottomlands is subject to the Federal Submerged Lands Act, which "relinquishes [title to the bottomlands] unto said States … *except as otherwise reserved herein*" (*id.* at PageID.600, quoting 42 U.S.C. § 1311(b) [emphasis added by the Enbridge Parties]). The Enbridge Parties emphasize that the State's property was burdened from the beginning by the federal government's express reservation of "its 'paramount' constitutional powers over these lands and waters for purposes of 'commerce . . . and international affairs ….'" (*id.*, quoting 42 U.S.C. § 1314(a)).

As a threshold matter, while the State Parties' Complaint does not expressly reference federal law, the task under this first prong is for the Court to examine whether the state-law claims *necessarily* raise any federal issue, or, as the *Grable* Court described the task, to identify whether there are federal issues "embedded" in the state-law claims presented by the State Parties. *See Grable* 545 U.S. at 308, 314, 319. *See also Estate of Cornell*, 908 F.3d at 1017 (describing the federal issue "nested inside" the plaintiffs' state-law cause of action). For example, in *Michigan v. Bay Mills Indian Cmty.*, 695 F.3d 406 (6th Cir. 2012), aff'd and remanded, 572 U.S. 782 (2014), the Sixth Circuit determined that while the State's claims were not based on any federal statute, each claim nonetheless "presents a question of federal law (whether the Vanderbilt casino is

9

located on Indian lands) that is disputed by the parties" and that "could have a substantial impact on both the present litigation and on federal Indian-gaming law more generally." *Id.* at 413.

The Court determines that there are at least two federal issues embedded in the State Parties' claims that the State properly revoked the 1953 Easement.  First, as the Enbridge Parties set forth more fully, the Federal Submerged Lands Act necessarily governs the scope of the State's property interest.  Specifically, under the exercise of its "paramount" constitutional powers, the federal government "burdened the State's ownership interest in the bottomlands by way of a 1977 Transit Pipelines Treaty with Canada" (ECF No. 47 at PageID.600).  The Treaty expressly governs not only the "pipeline or any part thereof" but also "all real … property … connected therewith." Art. I.  The Treaty declares that "[n]o public authority in the territory of either Party shall institute any measures, other than those provided for in Article V, which are intended to, or which would have the effect of, impeding, diverting, redirecting or interfering with in any way the transmission of hydrocarbons in transit." Art. II(1).  Additionally, the federal Pipeline Safety Act further burdens the State's ownership interest by expressly prohibiting states from imposing safety regulations on interstate pipeline operations. *See* 49 U.S.C. § 60104(c) ("A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation.").  Whatever the merits of the State Parties' claims, the Court is convinced that embedded in their claims are at least these two federal issues that will necessitate review.

2.      *Are the federal interests in the issues actually disputed and substantial?*

There can be no serious question that the federal interests in this case are "actually disputed."  Regarding the substantiality of the federal interests, four factors inform the Court's evaluation:  "(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e.,

10

the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)." *See Mikulski*, 501 F.3d at 570 (citing *Empire Healthchoice*, 547 U.S. at 700).

Last year, in *Miller,* 949 F.3d at 993, the Sixth Circuit found these necessary "federal indicia" were not present, even assuming arguendo that the case involved federal issues. In *Miller*, the only child of a deceased federal employee filed an action in federal court against the employee's former spouse, seeking a declaration that she was the rightful owner of life insurance proceeds distributed to her pursuant to the Federal Employees' Group Life Insurance Act (FEGLIA). The district court granted the motion to dismiss the action for lack of subject matter jurisdiction, and the Sixth Circuit affirmed the decision on appeal. In analyzing this prong of the *Grable* analysis, the Sixth Circuit pointed out that there was no federal agency present in this dispute, and the Sixth Circuit determined that any federal issue regarding application of FEGLIA was neither substantial nor significant inasmuch as the result would not apply to a broad range of parties but was a "fact-bound and situation-specific" inquiry. *Id.* at 993-994 (citation omitted). *See also Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 712 (6th Cir. 2012) (holding in a personal-injury action resulting from an automobile-train collision that the plaintiff's claim "does not have contested, or substantial, federal issues").

The State Parties argue that their Complaint in this case also presents "fact-bound and situation-specific" issues—the invalidity of the 1953 Easement, the Enbridge Parties' noncompliance with the specific terms of that easement, and the interpretation of the specific terms of another agreement between the State and the Enbridge Parties in 2018—issues that are highly unlikely to control in any other case (ECF No. 42 at PageID.492). The State Parties opine that the Enbridge Parties' "generic allegations of federal interests are insufficient to convert a state law claim into a federal law claim" (*id.* at PageID.500).

11

In response, the Enbridge Parties argue that the federal interests at stake in this case are indeed substantial (ECF No. 47 at PageID.606-610).  According to the Enbridge Parties, the causes of actions as alleged in the Complaint threaten to "upset longstanding federal-state relations," "second-guess" policy decisions made by Congress and the Executive Branch, and "skew divisions of responsibility set forth in federal statutes and the United States Constitution" (ECF No. 1-2 at PageID.115).

The Court determines that this case involves a federal agency inasmuch as the Pipeline and Hazardous Materials Safety Administration (PHMSA) is vested with exclusive jurisdiction to issue an emergency order requiring pipeline closure "when an unsafe condition or practice, or a combination of unsafe conditions and practices, constitutes or is causing an imminent hazard."  49 U.S.C. § 60117(p); 49 C.F.R. § 190.236.  Furthermore, with Canada's invocation of the dispute resolution provision in the 1977 Treaty, the federal issues in this case are under consideration at the highest levels of this country's government.  The federal issues are far from "trivial" but raise vitally important questions that implicate the federal regulatory scheme for pipeline safety and international affairs.  Indeed, the Enbridge Parties opine that if the Treaty bars the State from shutting down Line 5, "then the litigation will end" (ECF No. 47 at PageID.609).

In *Estate of Cornell*, 908 F.3d at 1016, which was a non-judicial foreclosure under Michigan law, the Sixth Circuit remanded the case to state court, opining that it was "hard to fathom how determining the contours of the nine circumstances in which states may prohibit a lender from enforcing a due-on-sale clause is especially important to the federal government."  The Court posits that this case, in contrast, which will necessitate examining the scope of the federal government's constitutional and statutory authority over the lands and waters at issue, is instead more akin to *Grable*, 545 U.S. at 315, where the government was concerned about its ability to collect delinquent taxes, and *Smith*, 255 U.S. 180, where the government's constitutional ability

12

to issue bonds was called into question.  *Estate of Cornell, supra* (comparing and contrasting the "substantiality" of the federal interests in these cases)*.*  The Court determines that the federal issues embedded in the State Parties' claims are not "fact-bound" or "isolated" but are "substantial," because of their clear "importance … to the federal system as a whole."  *Gunn*, 568 U.S. at 260.  The Court concludes that the federal issues are sufficiently substantial to justify the exercise of federal-question jurisdiction.

3.      *Would the congressionally approved balance of judicial responsibilities be disturbed?*

The last prong of the *Grable* analysis concerns whether finding a substantial federal question would "open the door of the federal courts to significantly more than the solitary case asserting a constitutional challenge," as in *Smith*, or portend only a "microscopic effect" on the federal-state division of labor, as in the quiet title action in *Grable*.  *Mikulski*, 501 F.3d at 574 (citations omitted).  In *Grable,* the Court observed that while the absence of a federal cause of action is a fact "worth some consideration in the assessment of substantiality," "its primary importance" is "as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331."  545 U.S. at 318.  The Court opined that a missing cause of action should be interpreted "not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues."  *Id.*  "[T]he absence of a federal private right of action [i]s evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires."  *Id.*

The Sixth Circuit opined that this third prong arose from "the desire to protect the federal courts from the burden of excessive litigation that is better suited to state courts."  *Mikulski*, 501 F.3d at 566 (ultimately holding that the substantial-federal-question doctrine did not provide

13

federal subject-matter jurisdiction over a state-law claim on the basis that an embedded element of the state-law claim concerns 26 U.S.C. § 312(n)(1), an accounting rule in the federal tax code). *See, e.g., Eastman*, 438 F.3d at 553 (observing that employment litigation is a common occurrence in both federal and state courts and holding that the "balance would be upset drastically if state public policy claims could be converted into federal actions by the simple expedient of referencing federal law as the source of that public policy").

Acknowledging that interstate natural gas pipeline routing and siting is subject to federal control, the State Parties nonetheless emphasize that Congress has left the states in charge of "those issues with respect to oil pipelines such as those at issue here" (ECF No. 42 at PageID.495, citing 49 U.S.C. § 60104(e) ("This chapter does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility.")).  The State Parties argue that under the Enbridge Parties' jurisdictional theory, "any dispute over the terms of an easement involving an interstate pipeline could be moved to federal court," effectively conferring federal jurisdiction on a whole category of suits and upsetting the legislative choice (*id.* at PageID.494-495).

As the Enbridge Parties point out (ECF No. 47 at PageID.605), however, the State Parties' argument does not demonstrate that the exercise of jurisdiction in this case would disturb the balance of judicial responsibilities.  Rather, the fact that provisions of the Pipeline Safety Act require interpretation, even if the provisions are ultimately construed in favor of the State Parties, demonstrates that the claims necessarily raise issues properly heard in federal court.  Moreover, the Court is not convinced that exercising jurisdiction over the state-law claims in this case would open the federal courthouse doors too wide.  State-law breach-of-contract claims and easement disputes rarely involve contested issues of federal law.  Exercising jurisdiction over this action would not "materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S at 319.

In conclusion, the Court holds that the Enbridge Parties have borne their burden of demonstrating that this action was properly removed under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1331.  Having considered all three prongs in the *Grable* jurisdictional analysis, the Court determines that the balance weighs in favor of exercising substantial-federal-question jurisdiction over the subject matter of the State Parties' Complaint.  The State Parties' claims "arise under" federal law because the scope of the property rights the State Parties assert necessarily turns on the interpretation of federal law that burdens those rights, and this Court is an appropriate forum for deciding these disputed and substantial federal issues.  Indeed, the dispute at bar may be just the sort of "'dispute … respecting the … effect of [federal] law'" that *Grable* envisioned." *Gunn*, 568 U.S. at 259 (quoting *Grable*, 545 U.S. at 313).

Therefore:

**IT IS HEREBY ORDERED** that the Enbridge Parties' Motion for Leave to File Supplemental Brief Based on Canada's Invocation of 1977 Transit Treaty (ECF No. 73) is GRANTED, and the proposed supplemental brief (ECF No. 73-1) is accepted for docketing.

**IT IS FURTHER ORDERED** that Amicus Curiae the Government of Canada's Motion for Leave to File Supplemental Amicus Brief (ECF No. 76) is GRANTED, and the proposed supplemental brief (ECF No. 76-1) is accepted for docketing.

**IT IS FURTHER ORDERED** that the State Parties' Motion to Remand (ECF No. 41) is DENIED.

Dated:  November 16, 2021                          /s/ Janet T. Neff
                                                   JANET T. NEFF
                                                   United States District Judge